**Mitchell Karl BOULDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 429–90.**

Court of Criminal Appeals of Texas,
En Banc.

May 1, 1991.

Rehearing Overruled June 19, 1991.

Terri Tipton Holder, Angleton, for appellant.

Jim Mapel, Dist. Atty. and Kelly McClendon, Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

### PER CURIAM.

A jury convicted appellant of the offense of aggravated robbery and assessed punishment at confinement for fifty years. The conviction was reversed and an acquittal entered. *Boulden v. State*, 787 S.W.2d 150 (Tex.App.—Houston [1st] 1990). We granted the State's petition for discretionary review to determine whether the Court of Appeals was correct in its holding that the evidence was insufficient to support the verdict of guilt.

The facts as set out by the Court of Appeals are as follows:

Nancy Morgan, the complaining witness, was approximately 77 years old. At 2:30 a.m. on July 8, 1988, while Morgan was sleeping, a man knocked on her bedroom window and told her to open the door. The man threatened Morgan, and then entered her home through the window next to the front door.

The man pointed a pistol at Mrs. Morgan and took her purse, which contained about $400 and some papers.

Mrs. Morgan described the intruder as a tall, young man; however, she could not identify him because he had placed a curtain over his face. She stated the man wore a "kind of white shirt," "kind of gray pants," and white gloves, and that the curtain covered his arms. After the intruder left, Mrs. Morgan called her niece, Hazel Lee Jones, who called the police.

At trial, defense counsel elicited testimony from Mrs. Morgan indicating that "her son" was the robber. In referring to her son, she meant a boy she had raised by the name of R.C. Woodard. R.C. Woodard is a different person than appellant. She said it was a "colored man" who had robbed her, and that this man was "the son" she had raised (R.C. Woodard). She said she knew it was her son because she recognized the sound of her son's car when it left her house, heading toward Four Forks. On redirect, Mrs. Morgan persisted in testifying that Woodard robbed her. Appellant is also black.

Lester Harris, who lived at least a half mile away from Mrs. Morgan, testified that he woke up at approximately 3:00 a.m. on July 8, 1988, looked outside the window of his home and saw a car parked partly in his driveway. Harris went outside, and saw the person in the car throwing envelopes "and stuff" out of the car. These included the following property of Mrs. Morgan: (1) a purse; (2) a paper with Mr. and Mrs. Clarence Morgan's names on it; and (3) a "telephone deal" with Mrs. Morgan's name on it. The driver left. Harris said that the car was a little loud, and described it as being a dark color, something like a Ford Pinto. Harris selected appellant from a photo lineup and at trial as the driver of the vehicle parked in front of his house. The driver was not wearing a shirt.

Terry Ward, a night clerk for a convenience store, testified that appellant purchased beer at the store at approximately 9:00 p.m. on the night of the burglary, and returned at 1:00 a.m. to use the phone to call a person whom Ward believed to be appellant's girlfriend. Appellant asked Ward to join him in a drive to Westheimer to "pick up" some women. Ward declined and told appellant to be careful about the police, because appellant appeared to be intoxicated. Appellant said that he did not have to worry about that, he had guns. Ward believed that appellant said he had "9 MM magnum." Appellant left in a small dark blue sports-type car. Appellant was not

wearing a shirt. Ward later identified appellant from a photo lineup.

Deidre McGill testified that she saw appellant around 11:00 p.m., and again at 1:30 a.m. In between visits, appellant had called her on the telephone, yelling at her. When appellant returned to her home after the telephone call, he waited in his car awhile, and left between 1:00 and 2:00 a.m. Ms. McGill lived a short distance from Mrs. Morgan.

Deputy Moore, of the Brazoria County Sheriff's Department, testified that he saw appellant at approximately 6:00 a.m. about a mile from Four Forks. His car was partially parked in the roadway, and was creating a traffic hazard. Appellant was in a small blue compact car; Moore was not sure if it was light or dark blue. Moore told appellant to go home, as appellant appeared to be in control of his faculties.

Officer Stroud and Sergeant Ricks arrested appellant at approximately 4:30 or 5:00 on the afternoon of July 8, 1988. Appellant was driving a dark-colored Datsun or Pinto.

Hazel Jones and her daughter, Penny Jones, testified that they did not see Woodard for a week or two after the robbery, even though Hazel Jones saw Woodard regularly. Woodard normally lived with Mrs. Morgan.

*Id.* at 152–153.

Based on these facts the Court of Appeals held that, "[E]very reasonable hypothesis except that of the guilt of appellant has not been excluded. The other reasonable hypothesis is that appellant found and rummaged through Morgan's purse after her son (R.C. Woodard) robbed her and discarded the purse." *Id.* at 153.

In addition to the facts set forth above Harris testified that when he approached the car the driver told him, while rummaging through the purse, that he was "just checking my wife's purse out." Prior to leaving Harris' driveway appellant informed Harris that Harris could pick up all the papers that appellant had thrown out of the window, an invitation which Harris declined. As Harris entered his home he

heard the car, which had a loud muffler, being driven away. Harris returned outside, picked up the papers and called Morgan, to whom a phone bill was addressed. Thirty minutes later the victim's grandniece, Penny Lee Jones, came to Harris' home and retrieved the papers. On her way back to the victim's home, Jones recovered additional papers belonging to Morgan from the side of the road which had been taken from the victim during the robbery.

■ The State contends that the Court of Appeals premised its opinion on the victim's testimony without regard to the other evidence which would allow a rational trier of fact to find appellant guilty. The State's case is based entirely on circumstantial evidence and, as such, the evidence must exclude every other reasonable hypothesis except that of the guilt of appellant before the evidence can be deemed to be sufficient to support the judgment. *Baugh v. State,* 776 S.W.2d 583 (Tex.Cr. App.1989). Further, in such a case, a reviewing court is not authorized to second guess the fact finder as long as a rational trier of fact could conclude that any remaining doubts or outstanding hypotheses are not reasonable. *Williams v. State,* 784 S.W.2d 428 (Tex.Cr.App.1990). Lastly, the entirety of the evidence is examined to determine if any rational trier of fact could have found sufficient evidence as to each element of the offense charged. *Butler v. State,* 769 S.W.2d 234 (Tex.Cr.App.1989).

■ With the foregoing in mind we examine the evidence in the light most favorable to the verdict. While Morgan continually identified "her son" as the man who robbed her this identification was based on the sound of the assailant's car. Harris' testimony showed that appellant was driving a loud car when he left after discarding the contents of the victim's purse on Harris' front lawn. Missing from the Court of Appeals' recitation of the evidence is appellant's statement to Harris that he was "just checking my wife's purse out." However the discarded papers did not bear appellant's or his wife's name. Strewn along the roadside between the victim's home and Harris' driveway were additional papers be-

longing to Morgan. Lastly, it should be remembered that appellant was seen several times during the night in a loud car similar to the car normally driven by Woodard. In fact, he was near the scene of the robbery shortly prior to the time of the offense, visiting his girlfriend. With the addition of these extra facts the jury, acting as a rational trier of fact, could have found appellant guilty regardless. The evidence viewed in the light most favorable to the verdict would exclude any reasonable outstanding hypotheses. The Court of Appeals erred in ordering an acquittal.

The Court of Appeals also found reversible error on a point upon which the State did not seek review. Therefore, that part of the Court of Appeals' opinion requiring the entry of an acquittal is reformed and the judgment of the Court of Appeals, as reformed, is affirmed.

CLINTON, BAIRD, MALONEY and BENAVIDES, JJ., concur in the result.