Affirmed and Opinion filed March 26, 1992



In The

# Court of Appeals
## Fifth District of Texas at Dallas

---

### No. 05-90-01580-CR

---

**EDMOND STEVEN LOWE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 203rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F90-34490-QP

---

## OPINION

Before Justices Lagarde, Ovard, and Burnett
Opinion By Justice Burnett

Our prior opinion and judgment of March 11, 1992, is withdrawn and this opinion is substituted in its stead.

Edmond Steven Lowe appeals his conviction for the murder of his supervisor William Schluneger after Schluneger fired him from his job. The jury assessed punishment at sixty-five years' confinement and a $10,000 fine. In four points of error, Lowe contends that: (1)

the trial court erred in overruling his motion to suppress because the search of his automobile was illegal; (2) the evidence was insufficient to support his conviction for murder instead of voluntary manslaughter; (3) the trial court erred in allowing into evidence his written statement; and (4) the prosecutor made impermissible jury argument. We overrule Lowe's points of error. We affirm the trial court's judgment.

## FACTS

William Schluneger, maintenance supervisor at the Dal-Chrome Bumper Company, decided to terminate Lowe early one Monday morning. He discussed this decision with Bob Marcotte, the plant manager. Marcotte advised Schluneger to pull Lowe's time card so that Lowe would come to his office. Lowe arrived at work, and when he did not find his time card, he went to see Schluneger. Schluneger told him that he was fired, and to pick up his personal tools and turn in his uniforms. Lowe said he had to go home and get his car because he had ridden his motorcycle to work that day and could not carry his tools on it.

Lowe asked for a letter detailing the reasons for his termination. Schluneger went to talk with Marcotte about the letter. Schluneger told Marcotte that Lowe disagreed with the reasons for his termination and wanted something in writing with the Dal-Chrome name on it. Marcotte said that was no problem and generated a form off of his computer. While Schluneger was in Marcotte's office completing the letter, Lowe came in. He called Schluneger a liar and said "this is some more of that good old boy shit."

Before he left the plant, Lowe tried to speak with Kirk Wilson, Dal-Chrome's general

-2-

manager. Wilson was conducting a sales meeting at the time, and told Lowe that he could speak with him after the meeting. Lowe left the plant, and returned with his uniforms. Lowe then went to Wilson's office. Wilson went to talk with Schluneger. When he returned, he told Lowe that he had to stand behind Schluneger's decision. Lowe told Wilson that "they're playing those good old boy games" and said he would turn in his uniforms. He testified that Lowe seemed calm.

Marcotte saw Schluneger and Lowe in the parking lot unloading the uniforms. He testified that they were not arguing. Lowe and Schluneger went to Schluneger's office. Lowe was standing in the doorway when Marcotte passed by. As Marcotte started into the office, Lowe raised his pistol and fired in the direction of Schluneger's desk. From his viewpoint in the doorway, Marcotte could not see Schluneger. Marcotte testified that Lowe then pointed the gun at him and asked him "do you want some of this, too, Mother Fucker?" Marcotte ducked and ran with Lowe chasing him. Wilburt Davis, another maintenance employee, testified that Marcotte tripped, and Lowe pointed the gun at him. Davis yelled at Lowe not to do it. Lowe then ran out of the plant and left in his car.

Marcotte ran to Wilson's office and told him that Lowe was taking shots at Schluneger. Wilson went back to Schluneger's office and found him laying behind the desk bleeding from the head. He grabbed some uniforms and put them under Schluneger's head. The paramedics attempted CPR without success. Dr. Robert Davis, the forensic pathologist who conducted the autopsy, testified that Schluneger died as a result of a single bullet

-3-

wound to the head.

Officer Gilmore and his partner were patrolling Lowe's neighborhood when they received a dispatch about a murder suspect. It gave Lowe's name, address, age, and described him as a black male. It also described the car and gave a partial license plate number. Officer Gilmore saw the car parked at a commercial garage near Lowe's house. As he approached the car, a white man was trying to open the driver's door. Officer Gilmore asked the man if he knew where the owner was, but got no response. Officer Gilmore and his partner began to search the premises. They found Lowe inside the garage and placed him under arrest. Officer Gilmore called for a tow truck and went to inspect the car. He lifted the armrest beside the driver's seat and saw the pistol underneath. At that time, he heard from his partner or over his radio that the Physical Evidence Section (PES) was on its way over. Officer Gilmore laid the armrest back down and left the car. Officer Gilmore told PES about the pistol. PES searched the car and removed the pistol. The officers impounded and inventoried the car after the PES completed its search of the car.

The court allowed Lowe's written statement into evidence. The statement reflects that Lowe believed he was fired on Monday because of a chemical spill on the previous Friday. He and another employee worked on joining pipes together for a filter system on Thursday. The other man actually glued the joints together because the space was too small for Lowe to work in. When the system was turned on, the joints gave way causing the spill. Wilburt Davis also testified that he and Lowe had been repairing a trailer on Friday

-4-

afternoon, but were unable to complete the job. Schluneger told Lowe that he had to stay late on Friday because Lowe had been too slow. Lowe stated that it was not fair because Schluneger gave them the choice of staying late or coming in on Saturday, but then Schluneger decided to finish the repairs himself. The letter reflects that Schluneger terminated Lowe because he was too slow at his work and did not have the ability to comprehend instructions requiring too much follow-up on the tasks assigned to him.

## AUTOMOBILE SEARCH

In his first point of error, Lowe contends that the trial court erred by overruling his motion to suppress the evidence obtained from the search of his car. The PES removed his pistol and a spent cartridge from the car. He argues that the police had no reason to conduct an inventory search, but searched the car only to obtain incriminating evidence. The State asserts that the police conducted a proper inventory search, or that the evidence showed exigent circumstances that justified a warrantless search of the car. The State also argues that, even if the trial court committed error by overruling the motion to suppress, it was harmless error under Texas Rule of Appellate Procedure 81(b)(2).

In his motion before the trial court, Lowe argued that the search violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and article 1, section 9 of the Texas Constitution. Lowe does not complain on appeal of any violation under either constitution. In his brief, Lowe cited only *Benavides v. State*, 600 S.W.2d 809 (Tex. Crim. App. 1980). The Court in *Benavides* only addressed the search of

-5-

the defendant's automobile under the Fourth Amendment of the United States Constitution. *See Benavides*, 600 S.W.2d at 810. Because he only brings us authority relying on the Fourth Amendment, we do not address any possible violation of his state constitutional rights under Article I, section 9. *See Heitman v. State*, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991).

In order for a warrantless arrest or search to be justified, the State must show the existence of probable cause at the time of the arrest or search and existence of circumstances which made procuring a warrant impracticable. *Melear v. Spears*, 862 F.2d 1177, 1182 n.4 (5th Cir. 1989). Under the United States Constitution, probable cause is a flexible, common-sense standard that merely requires that the facts available to the officer would "warrant a man of reasonable caution" to conclude that the place contains contraband or evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 743 (1983).

Officer Gilmore received a dispatch describing Lowe as a black man suspected of murder and accurately describing his car and a partial license plate number. They arrested Lowe within close proximity of the car. The officers had probable cause to believe that Lowe had driven the car to its present location and that instrumentalities of the murder could be in the car.

The State had to show exigent circumstances justifying the warrantless search of the car. The Supreme Court has upheld warrantless searches of automobiles because of their inherent mobility and the reduced expectation of privacy associated with vehicles as

-6-

compared to a home or office. *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). The State argues that Officer Gilmore had reason to believe that the car might be moved because he saw an unknown white male trying to enter the car. However, this is not a situation where the car was on the highway or the owner was alerted and capable of moving the car. *See Coolidge v. New Hampshire*, 403 U.S. 443, 460 (1971). By this time, the officers had Lowe under arrest. They could have locked the car and one officer could have guarded it while the other called in for the warrant.

This is also not a situation where the police removed Lowe from the car and had no other alternative except to impound and inventory the car. *See Benavides*, 600 S.W.2d at 810. The car was off the street and on private property. The garage owner was on the premises. The police questioned the garage owner about Lowe's whereabouts, but never about the car. *See Benavides*, 600 S.W.2d at 810.

Finally, the State argues that the Supreme Court upholds warrantless searches if done for protection of the public safety. *Cady v. Dombrowski*, 413 U.S. 433 448 (1970). In *Cady*, the police had the defendant's disabled car towed from a public highway to a private garage. *Cady*, 413 U.S. at 444. Since the defendant was a police officer who was required to carry his revolver and the car was towed to an unguarded private lot which was vulnerable to vandals, the Court held that the warrantless search was not unreasonable under the Fourth Amendment. *Cady*, 413 U.S. at 448. The Court noted that, at the time of the search, the defendant has been arrested for public intoxication. The officer was unaware at the time

-7-

of the search that a murder or any crime had been committed in which the defendant would be a suspect. *Cady*, 413 U.S. at 447.

In this case, unlike *Cady*, two officers were working together with definite knowledge that they had arrested a murder suspect. More officers arrived from PES specifically to deal with any physical evidence. With that many officers and the suspect under arrest, public safety was not a concern in this situation. Even though the officers had probable cause, the warrantless search was unreasonable. The trial court erred by denying Lowe's motion to suppress.

Since the trial court erroneously overruled the motion to suppress, we must examine whether the error was harmless. Under Texas Rule of Appellate Procedure 81(b)(2), we must determine whether the error contributed to Lowe's conviction or punishment. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); *U.S. v. Barrington*, 806 F.2d 529, 533 (5th Cir. 1986). Numerous witnesses testified to the morning's events. The pistol and spent cartridge in Lowe's car only supports the fact that Lowe had a gun to shoot Schluneger with. The only issue at trial, however, was not whether Lowe shot Schluneger, but Lowe's state of mind at the time. The introduction of the pistol and spent cartridge did not contribute to Lowe's murder conviction, or assessment of punishment. We overrule his first point of error.

## SUFFICIENCY OF THE EVIDENCE

In his second point of error, Lowe contends that the evidence is insufficient to prove that he committed murder instead of voluntary manslaughter. The trial court instructed the jury on both murder and voluntary manslaughter.

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Turner v. State*, 805 S.W.2d 423, 427 (Tex. Crim. App.), *cert. denied*, 112 S. Ct. 202 (1991). This standard supports the jury's responsibility, as the trier of fact, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Robinson v. State*, 764 S.W.2d 367, 372-73 (Tex. App.--Dallas 1989, pet. ref'd). The jury, as the trier of fact, remains the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. The jury may accept or reject any or all of the evidence for either side. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *see* TEX. CODE CRIM. PROC. ANN. arts. 36.13, 38.04 (Vernon 1979).

Lowe committed voluntary manslaughter instead of murder if he caused Schluneger's death under the immediate influence of sudden passion arising from adequate cause. TEX. PENAL CODE ANN. § 19.04(a) (Vernon 1989). The Texas Penal Code defines sudden passion as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion desires at the time of the offense and

-9-

is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.04(c) (Vernon 1989). If the defendant raises the issue of sudden passion, but the jury finds him guilty of murder, we must make two determinations in our sufficiency analysis: (1) whether the evidence was sufficient to establish the offense of murder; and (2) whether the evidence was sufficient to disprove the issue of sudden passion. *Johnson v. State*, No. 824-89, slip. op. at 7 (Tex. Crim. App. July 3, 1991). The State can prove the absence of sudden passion by presenting evidence that at the moment Lowe intentionally or knowingly killed Schluneger, he was capable of, and did in fact, act with cool reflection, in spite of provocative circumstances. *Johnson*, No. 824-89, slip op. at 7; *see Gold v. State*, 736 S.W.2d 685, 690 (Tex. Crim. App. 1987).

There was little inconsistency between the witnesses' version of the shooting. The defendant's case and counsels' argument concentrated on Lowe's state of mind when he shot Schluneger. Lowe argues that his actions arose from extreme anger over being unjustly fired. Marcotte and Wilson testified that Lowe referred to "good old boy games" and used the same phrase in his written statement. He argues that this perceived racial and job discrimination escalated into a sudden explosion. The defense psychological expert, Dr. Grigson testified that Lowe had formed no intent to kill, but was suddenly overcome by anger.

The evidence also shows that Lowe was capable of cool reflection even though angry about his firing. After Schluneger terminated him, he asked to have the reasons in writing.

-10-

He left the plant, and then returned with a pistol approximately an hour later. Upon returning, he went to talk with Wilson about the firing. Wilson saw him just minutes before the shooting and said he appeared calm. Lowe had enough presence of mind to also bring his uniforms back because Marcotte saw Lowe and Schluneger unloading them just before the shooting. His written statement indicated that he and Schluneger were arguing at the time of the shooting. He told Bill "what you are doing is not right" and then shot him one time. He also said he could have shot Marcotte if he wanted to but he decided to go ahead and leave.

The evidence shows that Lowe attempted to resolve the matter and that he shot Schluneger, when management would not reverse the decision. The evidence is sufficient to show that Lowe acted with cool reflection in spite of provocative circumstances. We overrule Lowe's second point of error.

## DEFENDANT'S WRITTEN STATEMENT

In his third point of error, Lowe contends that the trial court erred in admitting the written statement he gave to the police after his arrest. He argues that the statement was not voluntary because the police coerced him into signing it.

Once the accused has raised the issue of voluntariness of a confession, the State has the burden of proving that the accused gave the statement voluntarily. *Griffin v. State*, 765 S.W.2d 422, 430 (Tex. Crim. App. 1989). When the defendant testified that he made a confession as a result of coercive acts and the testimony is uncontradicted, then the

-11-

confession is inadmissible as a matter of law. However, when that testimony is disputed, the issue is one of fact to be determined by the trier of fact. *Griffin*, 765 S.W.2d at 430. Determination of the voluntariness of a confession must be based upon the totality of the circumstances surrounding its acquisition. *McCoy v. State*, 713 S.W.2d 940, 955 (Tex. Crim. App. 1986) *cert. denied*, 477 U.S. 909. In a hearing, the trial judge is the sole judge of the credibility of the witnesses and the weight of their testimony. *Gentry v. State*, 770 S.W.2d 780, 790 (Tex. Crim. App. 1988) *cert. denied*, 490 U.S. 1102; *Harville v. State*, 591 S.W.2d 864, 867 (Tex. Crim. App. 1980). Our review is limited to whether the trial court abused its discretion in finding that the statement was voluntary and allowing it into evidence. *McCoy*, 713 S.W.2d at 955.

Officer Ortega, who wrote down the confession, and Lowe gave conflicting testimony during the suppression hearing. Ortega testified that he read Lowe his Miranda rights on two occasions, read the rights printed at the top of the voluntary statement form, and asked Lowe if he understood. Ortega then wrote out the statement as Lowe gave it. After he finished writing, Ortega testified that he got a witness and read the statement back to Lowe. Lowe made four changes to the statement which Lowe, Ortega, and the witness initialled. Lowe then signed the statement at the bottom of each page. Lowe testified that Ortega tricked him into signing the statement by telling him that it would be used against him whether he signed it or not. Lowe further testified that another officer read him his Miranda rights.

-12-

The trial court found that the statement was voluntary and admitted it into evidence. The evidence is sufficient to support the trial court's finding. The trial court did not abuse its discretion by allowing the statement into evidence. We overrule Lowe's third point of error.

## IMPROPER JURY ARGUMENT

In his fourth point of error, Lowe contends that the prosecutor made an improper jury argument when counsel referred to the range of punishment for involuntary manslaughter during the guilt-innocent phase of the trial. He argues that, even though the trial court gave the jury an instruction to disregard, we must reverse his conviction because the argument was so damaging.

The general areas of proper jury argument are (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of the opposing counsel, and (4) plea for law enforcement. *Walker v. State*, 664 S.W.2d 338, 340 (Tex. Crim. App. 1984). Generally, the defendant must make a timely, proper, and specific objection to the improper jury argument to preserve the complaint for appellate review. *Miller v. State*, 741 S.W. 2d 382, 391 (Tex. Crim. App. 1987), *cert. denied*, 108 S. Ct. 2835 (1988); Tex. R. App. P. 52 (a). If the court overrules the objection and the argument was improper, then we must determine whether the error was harmless. *Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990). If the court sustains the objection, then defense counsel must request that the trial court instruct the jury to disregard the improper

-13-

argument. We presume that the jury follows the court's instruction unless the argument was so inflammatory that its prejudicial effect could not reasonably be removed by the instruction. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex. Crim. App. 1990) (per curiam).

The error arose from the only issue in the case, that is, whether the defendant committed murder or voluntary manslaughter. Both parties presented evidence on Lowe's mental state when he shot Schluneger. During closing argument, the prosecutor began talking about the defense theory that Lowe committed voluntary manslaughter instead of murder. He then stated that voluntary manslaughter is "only punishable up to twenty years in prison." The defense counsel objected and the court sustained the objection. The court then instructed the jury to disregard anything dealing with punishment and to simply reach a verdict on the court's instructions. The trial court then denied Lowe's motion for mistrial. The prosecutor dropped the issue and never referred to it again.

We conclude that the prosecutor's single indiscretion into an impermissible argument was not so inflammatory that the court's instruction did not cure any harm. *Cf. McClure v. State*, 544 S.W.2d 390, 393 (Tex. Crim. App. 1983) (incurable error when prosecutor made repeated references to difference in punishments after trial court sustained initial objection). We overrule Lowe's fourth point of error.

-14-

We affirm the trial court's judgment.

_____
JOE BURNETT
JUSTICE

Do Not Publish
Tex. R. App. P. 90
901580F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDMOND STEVEN LOWE, Appellant

No. 05-90-01580-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the 203rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F90-34490-QP).

Opinion delivered by Justice Burnett, Justices Lagarde and Ovard, participating.

The judgment of March 11, 1992, is withdrawn and this judgment is substituted in its stead.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 26, 1992.

JOE BURNETT
JUSTICE