IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-0465-03






JAMES THOMAS GUYMON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


WILLACY COUNTY





 Johnson, J., delivered the opinion of the Court, joined by Meyers, Price, Holcomb,
and Cochran, JJ. Hervey, J., filed a dissenting opinion, joined by Keller, P.J., and
Keasler, J. Womack, J., dissents.


O P I N I O N



 Appellant was tried by a jury and found guilty of kidnapping and unlawful restraint of a child. 
Tex. Pen. Code §§ 20.03(a), 20.02(a). The trial court assessed his punishment, enhanced by two
prior felony convictions, at life imprisonment. On direct appeal, the court of appeals vacated the
unlawful-restraint conviction on double-jeopardy grounds, but affirmed the kidnapping conviction
and life sentence. Guymon v. State, 2003 Tex. App. LEXIS 914 (Tex. App. 2003). This Court
granted review to determine whether the court of appeals erred in finding that the evidence was
legally sufficient to support the kidnapping conviction and in holding that appellant failed to preserve
error with regard to an improper jury argument by the state. Because there was no evidence that
appellant formed the requisite intent to abduct the victim, we will reverse.

Facts:

 Evidence at trial showed that, some time between 6:00 and 8:00 p.m. on March 2, 2000, 11-year-old G.C.'s mother had told him leave her house because he had been "doing spray for two
days." His mother testified that, at the time she told him to leave, G.C. had with him a green soda
can that he had been using to sniff paint.

 Some time after G.C.'s mother told him to leave her home, witnesses saw G.C. open the door
of BJ's Bar in Raymondville. G.C. motioned to appellant, who was drinking in the bar, to come
outside. Appellant went out and spoke with G.C. briefly, then returned to his drink in the bar. G.C.
opened the door of the bar a second time and again motioned appellant out. The owner of BJ's Bar
witnessed these events.

 At approximately 9:00 p.m. that same evening, two deputies patrolling on Highway 186 just
west of Raymondville noticed appellant because he was driving on the shoulder and had expired
license plates. Appellant stopped promptly when the deputies deployed their lights. The stop
occurred near, but not in, a roadside park that is approximately 2 miles west of Raymondville. (1) 
After speaking with appellant, the police suspected that he was intoxicated and began to administer
field sobriety tests. One of the deputies then noticed 11-year-old G.C. sitting in the passenger seat
of the car. G.C. had silver spray paint around his nose and mouth, and the deputies found a green
soda can containing silver spray paint during their search of appellant's car.

 At trial, Deputy Puente of the Willacy County Sheriff's Department testified that G.C.
seemed frightened, but opined that if G.C. had been afraid of appellant he would have told the
deputies and that G.C. more likely was afraid because he was on juvenile probation and had been
caught with paint. G.C. told Puente that he did not know appellant and that appellant had forced him
into the car at gunpoint, had hit him in the face, and had forced him to sniff paint. G.C. also denied
asking appellant for a ride. Puente also testified that, while G.C. had paint on his nose and mouth,
there was no paint odor and appellant had no paint on his person or clothes. The inventory search
of the passenger area of appellant's car did not produce weapons, drugs, or paint other than that in
G.C.'s green soda can. Puente did not see any injuries on G.C. To Puente's personal knowledge,
there was no evidence of kidnapping.

 G.C.'s mother, Dolores Cantu, testified that she did not know appellant and she had not given
him permission to take G.C. anywhere. On cross examination, she said that G.C. had been high on
paint for two days and that when he is high, he lies. To her knowledge, but without her consent,
G.C. goes to BJ's Bar. She identified the soda can from appellant's car as the can G.C. had had
when he left home that night. She conceded that persons other than appellant, including police
officers, have given G.C. rides without her permission, but that she did not think that G.C. had been
kidnapped by any of them. The trial court allowed her to testify that G.C. had told her repeatedly
that he did not want to testify, that he had lied to the officers at the time of appellant's arrest, and that
appellant had given him a ride at his request. She seemed hostile to the state, and said that G.C. was
in the prosecutors' office at that moment, without her consent, and that the prosecutors were "trying
to get him to say things that are not true." She also said that G.C. tends to associate with adults
rather than other children.

 G.C. was twelve years old at the time of trial. His testimony was inconsistent at best. He
testified that he had been doing paint for one year and that he began doing paint at age twelve. He
could not remember the time of the stop, what he was wearing, where the car was headed, how long
he was in the car, or how he got into appellant's car. He did, however remember the stop. He
contradicted many things that his mother had testified to, including associating with adults and
getting rides without his mother's permission.

 The most consistent parts of G.C.'s testimony are that he did not know appellant or where
he lived, that he had met appellant only once, and that he had lied about appellant; appellant did not
have a gun, nor did he hit G.C., force him into appellant's car, or force him to sniff paint. G.C. also
testified that he had wanted to invoke his Fifth Amendment rights because he was afraid that the
prosecutors would charge him with perjury if he testified truthfully and exonerated appellant.

 After the state rested, the trial court granted a defense motion for directed verdict on Count
1 of the indictment (injury to a child) and notified the state that, for the jury charge, it would have
to choose one count from among counts 2, 3, and 4 (one count of kidnapping and two counts of
unlawful restraint).

 José Vasquez, owner and bartender of BJ's Bar, testified for the defense that he had known
G.C. "for a while" and that G.C. went around the bar "all the time." Appellant was in the bar one or
two times a week. That night appellant had two beers. Vasquez knew where G.C.'s mother lived,
but not where appellant lived.

 Vasquez also testified that G.C. had motioned appellant out of the bar and that he did not find
that odd; it was not unusual for children to "go in there and call their daddy or call anybody out." 
When G.C. motioned to appellant, he went out and returned. G.C. motioned to appellant again, and
he went out again. Vasquez had not heard the conversations between appellant and G.C., but he was
allowed to opine that G.C. "probably" wanted a ride.

 Eloy Zamarano, G.C.'s juvenile probation officer, testified that he had legal custody of G.C.
at the time of trial. (2) G.C. had told Zamarano that he did not want to testify because he had lied to
the deputies and was afraid of a perjury charge. Zamarano confirmed that "doing paint" will addle
one's brains.

 Daniel Cavazos, an investigator from the Willacy County Sheriff's Department who
investigated the kidnapping, testified for the defense, saying that his interviews with G.C. on the day
following appellant's arrest indicated that G.C. wanted a ride to another place and "was going to
show Mr. Guymon where to drive him." He saw no sign of injury on G.C. and told the prosecutor
that there was no evidence of kidnapping.

 G.C. returned to the witness stand and testified again during the defense case:

 Q. Let me ask you this. When you were in Mr. Guymon's car, were you free to
go wherever you wanted?

 A. Yes, sir.

 Q. Did he keep you in there in the car by force?

 A. No, sir.

 Q. Did he trick you into getting into the car?

 A. No, sir.

 Q. Did he lie to you so you could get into the car?

 A. No, sir.

 Q. Did he somehow hold you down or restrict your movement?

 A. No, sir.

 Q. Did he keep you from calling your mom or calling the police or calling
anybody you wanted?

 A. No, sir.

* * *

 Q. When you were in his car, were you free to do whatever you wanted?

 A. Yes, sir.


 Appellant did not testify.

 In rebuttal, the state called a second deputy to testify that the roadside park was not on the
way from BJ's to Dolores Cantu's home. At the conclusion of the state's rebuttal case, appellant
moved for an instructed verdict, arguing that there was no evidence that he had abducted G.C. The
trial court overruled the motion. Despite the trial court's statement after the state rested that the state
would have to elect a single count from among counts 2, 3, and 4, the charge submitted to the jury
contained instructions on both kidnapping and unlawful restraint.

 During closing arguments, the prosecutor referred to appellant as a "pervert." Appellant
objected and moved for mistrial. The trial court sustained the objection, but allowed the state to
continue its argument without specifically ruling on appellant's motion for mistrial. The jury found
appellant guilty, and after denying a defense motion for judgment NOV, (3) the court imposed a
mandatory life sentence.

 The court of appeals upheld the kidnapping conviction, finding that "[a]ppellant effectively
restricted the child's movement by transporting him in his vehicle to a remote location, at nighttime,
while the child was in a highly impaired state" and that the evidence presented at trial was sufficient
to allow a rational juror to infer intent to kidnap. Guymon v. State, 2003 Tex. App. LEXIS 914, at
*10 (Tex. App. 2003). The court of appeals also found that the evidence was not so weak as to be
clearly wrong and manifestly unjust, nor was the verdict against the great weight of the evidence. 
Id. at *13. As to appellant's complaint about jury argument, the court of appeals held that appellant
had failed to preserve error because he had not obtained an adverse ruling on his motion for a
mistrial.

The kidnapping statute

 The relevant part of the kidnapping statute states:

 § 20.03. Kidnapping

 (a) A person commits an offense if he intentionally or knowingly abducts another
person.


Tex. Penal Code § 20.03. Section 20.01 of the Penal Code contains the definition of "abduct":

 (2) "Abduct" means to restrain a person with intent to prevent his

 liberation by:

 (A) secreting or holding him in a place where he is not likely to be

 found; or

 (B) using or threatening to use deadly force.


Tex. Penal Code § 20.01. That section also defines "restrain":

 (1) "Restrain" means to restrict a person's movements without consent,

 so as to interfere substantially with the person's liberty, by moving

 the person from one place to another or by confining the person.

 Restraint is "without consent" if it is accomplished by:


 (A) force, intimidation, or deception; or


 (B) any means, including acquiescence of the victim, if:


 (i) the victim is a child who is less than 14 years of age or an

 incompetent person and the parent, guardian, or person or

 institution acting in loco parentis has not acquiesced in the

 movement or confinement


Tex. Penal Code § 20.01.


Restraint

 Because G.C. was less than 14 years of age when these events took place, he was not capable
of giving consent to restraint. Therefore, the question of restraint is limited to whether appellant
restricted G.C.'s movements so as to interfere substantially with his liberty. Tex. Penal Code §
20.01(1)(B)(I).

 In addition, the state must prove the appropriate mens rea: "restrain with intent to prevent
his liberation." If this were not the case, any adult who gives a child under the age of 14 a ride
anywhere without first obtaining the permission of that child's parent is guilty of kidnapping.

Intent to prevent liberation

 In Mason v. State, this Court discussed the mens rea of kidnapping:

 A kidnapping becomes a completed offense when a restraint is accomplished, and
there is evidence that the actor intended to prevent liberation and that he intended to
do so by either secretion or the use or threatened use of deadly force. Therefore, the
State had the burden to prove that a restraint was completed and that the appellant
evidenced a specific intent to prevent liberation by either secretion or deadly force.


 Mason v. State, 905 S.W.2d 570, 575 (Tex. Crim. App. 1995)(internal citations omitted).

 There was no evidence in this case that appellant used deadly force. Therefore, the state had
to prove beyond a reasonable doubt that appellant intended to prevent G.C.'s liberation by secreting
or holding him in a place where he was not likely to be found.

 When reviewing legal sufficiency, we view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found each element of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781
(1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). As noted above, the intent
to prevent liberation is an essential element of the offense of kidnapping.

 In this case, the sum of the evidence showing appellant's intent to prevent G.C.'s liberation
by secreting him in a place where he was not likely to be found, as described by the court of appeals,
was as follows:

 The record shows that appellant was unknown to both the child and his mother. At
the time he was stopped by Deputy Puente, appellant was transporting the child in a
direction other than towards the location of the child's home. Appellant was
transporting the child in his vehicle out of the city limits.

* * *

 The evidence further shows the child was in a highly impaired state, having inhaled
paint throughout the day. Although at the time of trial the child desired to exercise
his Fifth Amendment rights, he testified that because of his highly impaired state he
could not remember why he entered appellant's vehicle that night. He could not recall
what he and appellant were doing out by the roadside park at that time of night, other
than he was inhaling paint. He also did not remember why appellant had taken him
out there.

* * *

 The child's mother testified that she had thrown the child out of their home earlier
that day because he had been inhaling paint. The mother identified the can of paint
the child had been inhaling throughout the day. The child carried this can with him
throughout the day. During the time he was transporting the child, appellant allowed
the child to continue inhaling the paint.

Guymon v. State, 2003 Tex. App. LEXIS 914, at *12-13 (Tex. App. 2003).

 Even if this evidence is viewed only "in the light most favorable to the verdict," no
reasonable jury could find that appellant's act of giving a ride to a strange child who appeared to be
incapacitated is sufficient to prove that appellant intended to prevent G.C.'s liberation "by secreting
him in a place where he was not likely to be found."

 It is undisputed that appellant did not know G.C. or his mother. Lack of familiarity is not
direct evidence that appellant intended to abduct G.C. when he agreed to give him a ride, however. 
On the contrary, this lack of familiarity supports the notion that appellant did not know that he was
driving G.C. away from G.C.'s home because appellant did not know where G.C. lived.

 It means little that the officers stopped appellant near a roadside park two miles outside the
Raymondville city limits because, according to the sheriff's investigator, G.C. told appellant where
to drive. (4) The testimony of the bar owner tends to show that G.C. was in the car with appellant
because he had asked appellant for a ride. G.C. testified that he was not restrained by appellant. 
While G.C.'s request for a ride could not make any restraint that existed consensual because G.C.
was under the age of 14 and legally incapable of consenting to restraint, it does provide evidence that
appellant did not initiate contact. G.C.'s testimony tends to show that appellant did not exercise any
physical restraint on G.C. other than the normal "restraint" of riding in a moving vehicle and
supports an inference that appellant did not intend to abduct G.C. when he agreed to give him a ride. 
Nor was there any evidence that appellant later formed the intent by "secreting" G.C. or "holding
him in a place where he is not likely to be found"; appellant was traveling on a main road, there was
no testimony that he had stopped anywhere between leaving BJ's and being stopped, he pulled over
immediately when the officers activated their lights, and he made no attempt to conceal G.C.'s
presence at the time of the stop.

 Because there was no showing of specific intent to abduct or evidence from which a
reasonable trier of fact could circumstantially infer an intent to abduct, we conclude that no
reasonable jury could have found appellant guilty of kidnapping. The only way the jury could have
inferred a sinister intent from appellant's actions would be in response to the prosecutor's improper
attempts to suggest that appellant was a "pervert." See Walker v. State, 664 S.W.2d 338, 340 (Tex.
Crim. App.1984) ("the prosecutor was improperly calling upon the jury to speculate as to other
activities of the accused, not shown by the evidence nor inferable from the evidence, and to consider
them in reaching a decision. This is impermissible."). Appellant's first point of error is sustained.

 Appellant also complains that the court of appeals erred in finding that he did not preserve
error as to the prosecutor's comment during final argument because he had not obtained an adverse
ruling on his motion for mistrial. While the trial court did not articulate its ruling, it is clear that the
trial court overruled appellant's motion: the trial continued. The court of appeals erred in failing to
address that issue.

 Because we find the evidence legally insufficient to support the verdict of guilt of
kidnapping, we reverse the judgment of the court of appeals as to that charge and render a judgment
of acquittal. We remand to the court of appeals to consider appellant's complaint as to the state's
final argument. In light of our holding that there is insufficient evidence to support a conviction for
kidnapping, we also remand to the court of appeals, which vacated appellant's conviction for
unlawful restraint based on double jeopardy created by the conviction for kidnapping, to reconsider
its decision as to that charge.

 Johnson, J.


En banc

Delivered: January 12, 2005

Do not publish
1. Throughout the trial, with almost every witness, the prosecutor asked the witnesses to speculate as to what
a 67-year-old man would be doing with an 11-year-old boy at night in a roadside park. For example, during cross-examination of the owner of BJ's bar, the prosecutor asked "If an officer testified that Guymon and this child ended
up there close to the roadside park, do you have any reasonable explanation as to what they would be doing there?" 
When the witness indicated that he did not know, the prosecutor established that the witness had been tending bar for
some 20 years, then asked, "And in that time is it unusual to have a gentleman of this age be talking to a child and
end up over there at the roadside park?" The witness again indicated that he did not know. There was no evidence
that appellant and G.C. had stopped, in or at the park or any other place, before the traffic stop.
2. At the time of trial, G.C. was living in a Texas Youth Commission facility.
3. Defense counsel and the trial court referred to a "motion in arrest and motion for judgment NOV." 
"Judgment NOV" is generally a civil concept, and it is clear from the record that defense counsel was asking the trial
court to set aside the jury's verdict on grounds of insufficient evidence.
4. During oral arguments before this Court, defense counsel pointed out that the state's attempts to
characterize the roadside park as an isolated spot far from the city of Raymondville were not accurate. Defense
counsel named several people, including a former county clerk and a local physician who lived close to where
appellant was stopped. Defense counsel also noted that if the state was allowed to ask the witnesses (and, impliedly,
the jury) to speculate that appellant was driving in that direction in order take G.C. somewhere where he could
molest him, one might just as well ask the jury to speculate that, having been "thrown out" by his mother, G.C. gave
appellant directions to the home of his grandmother or his aunt in Lasara, a town which lies a few miles west of the
roadside park, the direction in which appellant was driving.