Al Frederick WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 237–83.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 22, 1984.

---

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty., Deborah E. Farris, Catherine Crier and Elton J. Kendall, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Cathleen R. Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted in a jury trial of burglary of a habitation with one prior conviction. The jury assessed punishment at 25 years confinement.

On February 16, 1983, the Dallas Court of Appeals affirmed appellant's conviction in an unpublished, per curiam opinion.

Appellant petitioned this Court to consider whether the Court of Appeals erroneously overruled his second ground of error which complained of the prosecutor's improper jury argument at the close of the guilt/innocence phase of the trial. The Court of Appeals held that the prosecutor's argument was both a reasonable deduction from the evidence and a proper response to defense counsel's argument.

Defense counsel, in pertinent part, argued:

"It's uncontested testimony that that was what Mr. Walker [appellant's father] was going to do that morning, go to work. It's uncontested from the witnesses and from the evidence that Al was going to go to work with his father that morning.

"You also know that Al works part time with his father. Mr. Walker said maybe one week, one day out of the week, one day out of every two weeks when Al is not working for the Dallas Housing Authority. And he told you that the Dallas Housing Authority, Al puts windows back on, I guess the public housing, the governmental housing, that he does repair work for the Dallas Housing Authority. But when he is not working there, when he has his day off there or not his day to work, he doesn't sit at home and mope around. He goes and helps his dad load bricks.

"Apparently on that day, on June the 2nd, that's where Al was going. He was going down to his dad's because he didn't have to work that day at the Dallas Housing Authority. And he was going to go to work with his dad helping him haul bricks."

\*     \*     \*     \*     \*     \*

"You have to look at the reasonableness of the testimony. Is it logical, is it reasonable, does it make sense that on the day in question that Al Walker, who had told his father that he was going to work with him and to pick him up after he got his cigarettes, is it reasonable that as Al was going to get the cigarettes, gee, I've got a little while, I guess I'll commit a burglary on the way to get a pack of cigarettes. And he runs into an individual identified as Anthony. Gee, I'm going to—let's commit a burglary. You're going to have to ask yourself, it that reasonable. Is that what a reasonable person is going to do on his way to get a pack of cigarettes while he's waiting for his father to come by and pick him up."

The prosecutor argued in rebuttal that the circumstantial evidence proved beyond a reasonable doubt that appellant committed the offense. An eyewitness testified that appellant was one of the burglars, and a police officer testified that appellant, when arrested near the scene of the offense, had several items which had been taken from the complainant's home. The prosecutor further argued:

"We're talking about something that happened almost three hours [after appellant was supposed to get the cigarettes], not moments later, not something that Al stumbled across as he headed for his cigarettes at 6:00 o'clock in the morning.

We're talking about something that didn't even start until around 8:00 o'clock in the morning. And you know that the officers got there at 8:15, right in there. So this is two hours and fifteen, two hours and thirty minutes after his father last saw him. A long time to get those cigarettes. But just enough time to go get his partner, start looking for homes where folks already had gone to work in the morning. *This is what he does for a living, Ladies and Gentlemen. This is his job. He's getting up and going to work, all right, after you do.*

"[DEFENSE COUNSEL]: Judge, we object. There's no evidence to that.

"THE COURT: Overruled." (emphasis added)

Appellant contends the above-quoted argument was improper, was outside the record, and constituted the unsworn testimony of the prosecutor that appellant was, in effect, a professional burglar.

In order to be appropriate, jury argument must fall within the areas of (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a plea for law enforcement. *Hightower v. State,* 629 S.W.2d 920 (Tex.Cr.App.1981); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App. 1973). The Court of Appeals in the instant case found the complained of argument to be both a reasonable deduction from the evidence and an answer to argument of opposing counsel.

The Court of Appeals simply stated that since "appellant was indicted ... [for] burglary with intent to commit theft, the prosecutor could reasonably infer a profit motive—thus, supporting the statement '[it] is his job'" (emphasis in original). The State refers us to *Valdez v. State,* 462 S.W.2d 24 (Tex.Cr.App.1970), as authority to support this holding. In *Valdez,* the prosecutor remarked "I tell you what we have here is a band of thieves, expert thieves out there breaking into automobiles." This Court held the remark did not constitute reversible error inasmuch as

"[t]he evidence not only showed appellant and his companions in possession of property recently stolen, but of property *taken from a locked car, leaving it locked and without a scratch or mark* other than where the tachometer had been pried out of the console between the front seats." (emphasis added). *Valdez,* supra at 27. Thus, the Court found the remark was a proper deduction from the evidence.

In the record before us, however, there is nothing to support the inference that appellant's "job" was committing burglaries or that he made his "living" by burglarizing. To the contrary, the record shows appellant was employed by the Dallas Housing Authority at the time of the offense, and on his days off he worked for his father hauling bricks. Moreover, even if the jury could infer a "profit" motive from the appellant's burglary, the proceeds of which appeared to have been a box with approximately fifteen eight track tapes, three watches, and assorted other small items, it does not follow that the evidence in any way supported the prosecutor's inference that the appellant's "work" was burglarizing. Thus, the prosecutor was improperly calling upon the jury to speculate as to other activities of the accused, not shown by the evidence nor inferable from the evidence, and to consider them in reaching a decision. This is impermissible. See *Jordan v. State,* 646 S.W.2d 946 (Tex.Cr. App.1983); *Turrentine v. State,* 536 S.W.2d 219 (Tex.Cr.App.1976); *Bailey v. State,* 531 S.W.2d 628 (Tex.Cr.App.1976); *Jackson v. State,* 529 S.W.2d 544 (Tex.Cr.App.1975); *Thomas v. State,* 527 S.W.2d 567 (Tex.Cr. App.1975); *Rodriquez v. State,* 520 S.W.2d 778 (Tex.Cr.App.1975); *Reynolds v. State,* 505 S.W.2d 265 (Tex.Cr.App.1974).

The Court of Appeals also found the prosecutor's argument to be a proper response to the above-quoted argument of defense counsel. The invited argument rule does permit a prosecutor to argue outside the record in response to defense argument which goes *outside* the record. *Johnson v. State,* 611 S.W.2d 649 (Tex.Cr.App. 1981). When defense counsel's argument is

not outside the record, however, the State may not in reply go outside the record and argue facts not in evidence. *Bailey,* supra; *Reynolds,* supra.

In the instant case, defense counsel's argument was not an impermissible venture outside the record and was not objectionable. Thus, the State was not entitled to respond to the argument by going beyond the record. *Thornton v. State,* 542 S.W.2d 181 (Tex.Cr.App.1976). The argument of the State could only have been made in an attempt to inflame the minds of the jurors in order to secure a favorable verdict.

The Court erred to the prejudice of appellant in overruling appellant's objection.

The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded.

W.C. DAVIS, J., not participating.

McCORMICK, Judge, dissenting.

Because I agree with the conclusion of the Court of Appeals that the prosecutor's argument complained of here was a proper answer to the closing argument of defense counsel, I dissent.

At trial, appellant's father testified that he worked for Brick Distributors as a truck driver hauling bricks. Appellant's father further testified that on occasion appellant would work with him, and on the day of the offense appellant was supposed to be helping him. However, on that day appellant failed to meet his father at the assigned meeting place.

*Throughout* his closing argument, defense counsel made an expansive, questioning use of the father's sparse testimony concerning *appellant's work or job* as a brick hauler on the day of the burglary. For instance, counsel argued about the glove found on appellant and allegedly used to gain entry to the victim's house as follows:

"But we know that Mr. Walker is a brick hauler. And we know that Al was going out there to help him that day haul bricks. And I think it's a reasonable assumption if you look at his glove, its probably a glove that a working man would wear when he is hauling bricks. There's not two gloves. We don't know if there was a second glove or not. There's one glove that fits on the right hand. I think it's a reasonable assumption the glove that a man hauling bricks is going to use. Maybe it's not the glove you would use. But then, you're not Al Walker and you are not Mr. Walker and you are not in the business of hauling bricks."

To hold in this case that the prosecutor, in his argument which is set out in the majority opinion, was improperly calling upon the jury to speculate as to other activities of the accused not shown by the evidence nor inferable from the evidence, and was not responding to defense counsel's argument is pure judicial speculation. The record simply does not support that conclusion. Rather, the majority has reached its holding through selective interpretation of isolated segments of the closing arguments made by both the State and defense counsel which the majority has taken out of context. Instead, the record of closing argument shows that the prosecutor's comment was an answer to the argument of opposing counsel and injected no new facts into the trial. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). Further, the comments were clearly reasonable deductions from the evidence. For the purpose of comparison, I have made the pertinent portion of the closing argument an appendix to this opinion.

I would affirm the judgments of the Court of Appeals and the trial court.

ONION, P.J., and CAMPBELL, J., join in this dissent.

APPENDIX

"Defense Counsel: You know from the Defendant's father, Fred Walker, and from the Defendant's sister, Helen Henderson, that on the night before the burglary on Lancaster was committed that Al stayed with his sister Helen. And he got up that morning and he was going over to his father's house who lived some eight or nine or ten blocks down the street. And

he got to his father's house and his father was getting out of bed. And he told him, 'I'm going down to the corner.' Apparently there's some gas stations at either corner and some other stores at either corner of Ledbetter and Lancaster.

He told his father he was going down there to get a pack of cigarettes and if he wasn't back by the time that his father left, to go ahead and pick him up because Al knew and his father knew that the route that Mr. Walker takes to go to work is down 56th Street and North of South Lancaster toward Ledbetter. Uncontested. It's uncontested testimony that that was what Mr. Walker was going to do that morning, go to work. It's uncontested from the witnesses and from the evidence that Al was going to go to work with his father that morning.

You also know that Al works part time with his father. Mr. Walker said maybe one week, one day out of the week, one day out of every two weeks when Al is not working for the Dallas Housing Authority. And he told you that the Dallas Housing Authority, Al puts windows back on, I guess the public housing, the governmental housing, that he does repair work for the Dallas Housing Authority. But when he is not working there, when he has his day off there or not his day to work, he doesn't sit at home and mope around. He goes and helps his dad load bricks.

The State introduced this glove into evidence, for what purpose I'm not sure. We know that the police, we know that the District Attorney never took this glove and either had it inspected by the police department or had it taken out to the Institute of Forensic Science, had it taken out to the Crime Lab, had it anywhere inspected by anybody either associated with law enforcement or associated with the District Attorney's Office to have it inspected for whatever reason. I assume for glass slivers.

But we know that Mr. Walker is a brick hauler. And we know that Al was going out there to help him that day haul bricks. And I think it's a reasonable assumption if you look at this glove, it's probably a glove that a working man would wear when he is hauling bricks. There's not two gloves. We don't know if there was a second glove or not. There's one glove that fits on the right hand. I think it's a reasonable assumption the glove that a man hauling bricks is going to use. Maybe it's not the glove you would use. But then, you're not Al Walker and you are not Mr. Walker and you are not in the business of hauling bricks.

You have to look at the reasonableness of the testimony. Is it logical, is it reasonable, does it make sense that on the day in question that Al Walker, who had told his father that he was going to work with him and to pick him up after he got his cigarettes, is it reasonable that as Al was going to get the cigarettes, gee, I've got a little while, I guess I'll commit a burglary on the way to get a pack of cigarettes. And he runs into an individual identified as Anthony. Gee, I'm going to—let's commit a burglary. You're going to have to ask yourself, is that reasonable. Is that what a reasonable person is going to do on his way to get a pack of cigarettes while he's waiting for his father to come by and pick him up. I want you to keep that in mind.

" * * *

"Prosecutor: The glove. Well, I guess we're now making a fur lined heavy leather glove a workmen's glove. Again, interesting theory. But you got to say something about it, I guess. We're going to get one fur lined glove and go haul bricks. Well, I don't see much evidence that there's been much brick hauling with this glove. You think there has been a little glass breaking with it maybe? One glove in the middle of June. What do you think that was used for?

Now, we also got this business about going down to get cigarettes. You know that Al's father got up there and testified that he goes to work about 6:00 o'clock in the morning. You know that Al showed

up there shortly before 6:00, according to his testimony, and said, 'I'm going down a couple of blocks away for cigarettes. I will be right back.' He says, 'Fine. You don't get back before I'm ready to leave, I'll pick you up on my way out.'

We're talking about something that happened almost three hours later, not moments later, not something that Al stumbled across as he headed for his cigarettes at 6:00 o'clock in the morning. We're talking about something that didn't even start until around 8:00 o'clock in the morning. And you know that the officers got there at 8:15, right in there. So this is two hours and fifteen, two hours and thirty minutes after his father last saw him. A long time to get those cigarettes. But just enough time to go get his partner, start looking for homes where folks already had gone to work in the morning. This is what he does for a living, Ladies and Gentlemen. This is his job. He's getting up and going to work, all right, after you do.

"Defense Counsel: Judge, we object. There's no evidence to that.

"The Court: Overruled."