**Mitchell Karl BOULDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00265–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 15, 1990.

Discretionary Review Granted June 13, 1990.

Terri Tipton Holder, Angleton, for appellant.

Jim Mapel, Crim. Dist. Atty., James L. Turner, Asst. Crim. Dist. Atty., for appellee.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a conviction for aggravated robbery and burglary of a habitation, following trial under a two-count indictment. The jury assessed punishment at 50 years confinement on both counts.

We reverse and order an acquittal.

Nancy Morgan, the complaining witness, was approximately 77 years old. At 2:30 a.m. on July 8, 1988, while Morgan was sleeping, a man knocked on her bedroom window and told her to open the door. The man threatened Morgan, and then entered her home through the window next to the front door.

The man pointed a pistol at Mrs. Morgan and took her purse, which contained about $400 and some papers.

Mrs. Morgan described the intruder as a tall, young man; however, she could not identify him because he had placed a curtain over his face. She stated the man wore a "kind of white shirt," "kind of gray pants," and white gloves, and that the curtain covered his arms. After the intruder left, Mrs. Morgan called her niece, Hazel Lee Jones, who called the police.

At trial, defense counsel elicited testimony from Mrs. Morgan indicating that "her

son" was the robber. In referring to her son, she meant a boy she had raised by the name of R.C. Woodard. R.C. Woodard is a different person than appellant. She said it was a "colored man" who had robbed her, and that this man was "the son" she had raised (R.C. Woodard). She said she knew it was her son because she recognized the sound of her son's car when it left her house, heading toward Four Forks. On redirect, Mrs. Morgan persisted in testifying that Woodard robbed her. Appellant is also black.

Lester Harris, who lived at least a half mile away from Mrs. Morgan, testified that he woke up at approximately 3:00 a.m. on July 8, 1988, looked outside the window of his home and saw a car parked partly in his driveway. Harris went outside, and saw the person in the car throwing envelopes "and stuff" out of the car. These items included the following property of Mrs. Morgan: (1) a purse; (2) a paper with Mr. and Mrs. Clarence Morgan's names on it; and (3) a "telephone deal" with Mrs. Morgan's name on it. The driver left. Harris said that the car was a little loud, and described it as being a dark color, something like a Ford Pinto. Harris selected appellant from a photo lineup and at trial as the driver of the vehicle parked in front of his house. The driver was not wearing a shirt.

Terry Ward, a night clerk for a convenience store, testified that appellant purchased beer at the store at approximately 9:00 p.m. on the night of the burglary, and returned about 1:00 a.m. to use the phone to call a person whom Ward believed to be appellant's girlfriend. Appellant asked Ward to join him in a drive to Westheimer to "pick up" some women. Ward declined and told appellant to be careful about the police, because appellant appeared to be intoxicated. Appellant said that he did not have to worry about that, he had guns. Ward believed that appellant said he had a "9 MM magnum." Appellant left in a small dark blue sports-type car. Appellant was not wearing a shirt. Ward later identified appellant from a photo lineup.

Deidre McGill testified that she saw appellant around 11:00 p.m., and again at 1:30 a.m. In between visits, appellant had called her on the telephone, yelling at her. When appellant returned to her home after the telephone call, he waited in his car awhile, and left between 1:00 and 2:00 a.m. Ms. McGill lived a short distance from Mrs. Morgan.

Deputy Moore, of the Brazoria County Sheriff's Department, testified that he saw appellant at approximately 6:00 a.m. about a mile from Four Forks. His car was partially parked in the roadway, and was creating a traffic hazard. Appellant was in a small blue compact car; Moore was not sure if it was light or dark blue. Moore told appellant to go home, as appellant appeared to be in control of his faculties.

Officer Stroud and Sergeant Ricks arrested appellant at approximately 4:30 or 5:00 on the afternoon of July 8, 1988. Appellant was driving a dark-colored Datsun or Pinto.

Hazel Jones and her daughter, Penny Jones, testified that they did not see Woodard for a week or two after the robbery, even though Hazel Jones saw Woodard regularly. Woodard normally lived with Mrs. Morgan.

■ In his first point of error, appellant asserts that the trial court erred in allowing the complainant's testimony, because she was not competent to testify.

Because appellant raises this matter for the first time on appeal, and because determining the competency of witnesses is a matter within the discretion of the trial court, we find that nothing is presented for review.

Point of error one is overruled.

In his second point of error, appellant asserts that the trial court erred in overruling his motion for instructed verdict and motion for new trial because there was insufficient evidence to support the jury verdicts.

■ In reviewing a sufficiency of the evidence challenge in a criminal case, the standard of review is whether, viewing all the evidence in the light most favorable to

the verdict or judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App.1984). This standard of review applies to cases involving direct evidence, as well as those involving circumstantial evidence. *Id.* In reviewing cases based on circumstantial evidence, " 'A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant.' " *Humason v. State,* 728 S.W.2d 363, 366 (Tex.Crim.App.1987) (quoting *Moore v. State,* 640 S.W.2d 300, 302 (Tex. Crim.App.1982)). The circumstantial evidence analysis is not a different standard of review. *Houston v. State,* 663 S.W.2d at 456.

■ Based on the evidence, every reasonable hypothesis except that of the guilt of appellant has not been excluded. The other reasonable hypothesis is that appellant found and rummaged through Mrs. Morgan's purse after her son (R. C. Woodard) robbed her and discarded the purse. We find, viewing the evidence in the light most favorable to the verdict, that no rational trier of fact could have found the essential elements of the crimes of burglary and robbery beyond a reasonable doubt.

Point of error two is sustained.

■ In his third point of error, appellant asserts that the trial court erred in overruling his objection to the State's argument at the punishment phase that appellant might have been thinking that he would not leave a victim alive to testify against him next time.

At the punishment phase, the State argued:

And, you know, he wants a second chance. I tell you it concerns me about giving somebody like this a second chance because I don't particularly want to see any more victims. I tell you what: Based on this evidence and based on his conduct, I'm real concerned that there will be more victims. *What concerns me is that this process is educating him to the standpoint that maybe, you know, I*

*made a mistake last couple of times. Next time, I won't leave a victim alive to testify.* (Emphasis added.)

Counsel objected, and the trial court overruled the objection.

■ Jury argument must fall within one of four categories to be proper: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to the argument of opposing counsel; and (4) pleas for law enforcement. *Walker v. State,* 664 S.W.2d 338, 340 (Tex.Crim.App. 1984).

■ Before reversible error occurs from improper jury argument, the statements must be so extreme, manifestly improper, or inject new and harmful facts into the case, that they deprive appellant of a fair and impartial trial. *McGee v. State,* 774 S.W.2d 229, 238 (Tex.Crim.App.1989), *petition for cert. filed,* No. 89–5208 (July 22, 1989) (not yet reported). In determining whether the comments by the prosecutor constitute reversible error, we must view the allegedly improper argument in light of the facts adduced at trial and in the context of the entire argument. *Id.* at 239. With regard to the jury argument, to which appellant did not object, that failure to object waives the error, unless the arguments were so prejudicial that no instruction could cure the harm. *Id.* at 240. However, with regard to the argument to which appellant objected, where a trial court overrules an objection to improper argument, it places "the stamp of judicial approval" on the argument, magnifying the harm. *Good v. State,* 723 S.W.2d 734, 738 (Tex.Crim.App.1986).

In *Walker v. State,* 664 S.W.2d at 340–41, the court held that a statement by the prosecution that the defendant was a professional burglar, was improper because it was outside the record, and it called the jury to speculate as to the activities of the accused. The court held that the argument could only have been made in an attempt to inflame the minds of the jurors, and that the argument prejudiced the defendant. *Id.* at 341.

In *Borjan v. State*, 715 S.W.2d 94, 97–98 (Tex.App.—San Antonio 1986, pet. granted), the court held that a plea to the jury to consider rape victims who had never come forward to testify was improper because it called upon the jury to speculate about matters not in evidence, was calculated to arouse the passion and prejudice of the jury, and was extremely harmful and prejudicial.

In this case, the argument by the State that, based on previous lenient treatment, appellant might be thinking that next time he would not leave a victim alive to testify was clearly improper. On two other occasions, during the guilt-innocence phase, the State improperly ventured outside the record, without objection by trial counsel: (1) the State argued that appellant had told Terry Ward he had an Uzi machine gun, when Ward had really testified that appellant had a 9 MM gun; and (2) the prosecutor argued that he had talked to the complainant several times, and that she had consistently maintained that she had been robbed, in spite of her periods of senility. Viewing this argument in light of the facts adduced at trial, and in context of the entire argument, we find that the error was reversible. It cannot be said beyond a reasonable doubt that the argument did not contribute to the punishment. Tex.R. App.P. 81(b)(2).

Point of error three is also sustained.

We reverse and order an acquittal.