**Wallington CIFUENTES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–97–00643–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 21, 1999.

William Burge, Houston, for Appellant.

John B. Holmes, Alan Curry, Houston, for Appellee.

Before Justices COHEN, WILSON, and NUCHIA.

## OPINION ON MOTION FOR REHEARING

DAVIE L. WILSON, Justice.

A jury found appellant guilty of aggravated robbery and assessed punishment at 20 years in prison. We deny appellant's motion for rehearing, but we withdraw our previous opinion dated August 6, 1998 and substitute this opinion in its stead. Our August 6, 1998, judgment affirming the trial court's judgment remains unchanged.

### Facts

At the guilt/innocence stage of the trial, Jesus Ibarra testified that on December 20, 1996, he heard a loud bang at the front door of the apartment he shared with Daniel Aranivar. Ibarra stated he went to the front door where he found appellant and another man wearing black ski masks with guns.[1] The front door had been knocked off its hinges.

Ibarra testified the two men pointed guns at him, and one of them told him to lay down on the floor, which he did. Aranivar testified he had been taking a bath at the time, and when he came out of the bathroom to get a towel, he saw Ibarra lying on the floor. Aranivar stated appellant then pointed a gun at him and told him to also lie down on the floor, which he did. Aranivar stated the other man said he was going to kill Aranivar and Ibarra. Both Aranivar and Ibarra testified they pleaded with appellant and the other man not to kill them. Aranivar and Ibarra also stated appellant and the other man then tied them up with shoe strings and asked them where their cocaine was. Aranivar and Ibarra said they did not have any cocaine. Appellant and the other man then demanded money from Aranivar and Ibarra. Aranivar testified that he gave the two men $100. Ibarra testified that his wallet, which contained $260, had already been taken by the one of the men.

Victor H. Sanchez testified that on December 20, 1996, he was visiting Mr. and Mrs. Eduardo Cordova at their apartment. While at the apartment, Sanchez stated he heard a "loud bang." Sanchez testified that Mr. Cordova's brother, Jose, told him to call the police because Jose had seen some men with guns forcing their way into the next-door neighbors' apartment. Sanchez then called the police.

Houston Police Officer Ralph Alan Cole testified that on December 20, 1996, while on patrol, he received a call that a burglary of a residence was in progress at an apartment complex. Officer Cole stated that when he arrived at the apartments, a person directed him to where the disturbance had occurred.

---

1. Although both men were wearing masks, one of the men was later identified as appellant.

Officer Cole testified that as he approached the apartment he drew his weapon when he heard a door creak open. Officer Cole testified that a man then came out of the apartment with a pistol in his belt. Officer Cole ordered the man to drop the pistol and lay down on the ground. The man began to draw his pistol, but then threw it on the ground and laid down. Officer Cole stated appellant then came out of the apartment carrying a videocassette recorder (VCR). Officer Cole stated he told appellant to drop the VCR and lay down on the ground. After the two men were handcuffed, Officer Cole and Officer William Eckert, who had just arrived at the scene, searched the apartment. Officer Cole testified he found another pistol just inside the front door. Officer Cole also found Aranivar tied up in the back bedroom. It was later determined that Ibarra had jumped from the second-story window. Officer Cole testified that after a pat-down search of appellant, all of Aranivar's and Ibarra's money was recovered.

### Issue Three

In issue three, appellant argues the trial court committed reversible error at the guilt/innocence stage of the trial in overruling appellant's request for an instruction to the jury to disregard an argument by the prosecutor that they should not consider a lesser misdemeanor offense.

The charge at the guilt/innocence stage of the trial contained an alternative charge on the lesser-included offense of misdemeanor theft. Regarding that offense, the following exchange took place at trial:

The State: The second thing I'd like to talk to you about is if you'll notice, there was some language in this charge regarding a misdemeanor theft. Okay. That's what's called a—

Mr. Martinez: Objection. May I approach the bench, Your Honor.

The Court: Yes, sir.

(Bench discussion had outside the hearing of the jury)

Mr. Martinez: I'd ask the Court to—I object on the grounds that she classified the range of punishment—she informed the jury that this was a

misdemeanor theft, and I'm objecting to that characterization, Your honor.

The State: The jury has a right to know what the lesser included offense is, Your honor.

Mr. Martinez: No, Your Honor. It's the theft and—

The Court: Sustained. Stay away from it.

Mr. Martinez I ask the Judge to instruct the jury to disregard that last comment.

The Court: Denied.

Mr. Martinez: At this time, Your Honor, I would respectfully move for a mistrial.

The Court: Overruled.

### Discussion

■ Appellant claims that the State's "argument was clearly improper and was asking the jury to consider the fact that if they found him guilty of the lesser included offense of theft, they would be convicting him of only a misdemeanor."

■ A prosecutor's reference to a lesser-included offense as a misdemeanor is not reversible error so long as he makes no explicit statement regarding the range of punishment assigned to felonies and misdemeanors. *Becerra v. State*, 652 S.W.2d 489, 492 (Tex.App.—Corpus Christi 1983, no pet.). Appellant, however, relies on *McClure v. State*, 544 S.W.2d 390 (Tex.Crim.App.1976), for the proposition that the State's reference to the lesser-included offense as a misdemeanor was improper and constituted reversible error because that information was not in the charge. The prosecutor in *McClure* continually stressed the penalty differences between the misdemeanor and felony offenses. *Id* at 392. Such references permeated his closing argument. *Id.* The argument in *McClure* was improper because it was a plea to the jury to consider the amount of punishment, rather than the facts, in determining the offense for which appellant should be convicted. *Id.* at 393. In the present case, the State did not argue that the difference in the level of the offenses should be used as a criterion for determining guilt, and the State never referred to the range of

punishment attached to each offense. We, therefore, conclude that the trial court did not err in refusing to instruct the jurors to disregard that portion of the State's argument.

We overrule issue three.

## Issue One

In issue one, appellant argues the trial court erred in overruling his objection to the State's inflammatory argument at the punishment stage of the trial.

During his final argument to the jury at the punishment stage, appellant's trial counsel urged the jurors to consider that appellant was 19 years old, unskilled, uneducated, away from his family, could not speak English, and could not find a job. Appellant's trial counsel suggested appellant may have been manipulated by the other individual who participated in the robbery. Moreover, in urging the jury to give appellant probation, trial counsel argued:

> If you read the instruction or you heard it, excuse me, there's a paragraph that says towards the bottom of the first page, community supervision means the placement of the defendant by the Court under a continuum of programs and sanctions with conditions. What that means is as he so inarticulately put it because he's thinking of the basic instinct of survival, he wants to eat, he wants to work. The way the Court puts it is continuum of programs and sanctions and conditions. *What it means is he might learn some English when he is on probation. He might learn how to do a resume. He might get some job training. He might get some counseling. He might get some job referrals. And at the same time, not be in a situation in a place where his spirit, his goals are being killed by whom he's with.* And, remember, he's 19 years old and he's a first offender. That's what the paragraph means. He's not out there free to roam and do what he wants. That's not true. He's got the benefit of all these courts—all this arsenal and resources this country has to help him grow up, change, learn some morals, whatever. Whatever prevents him from doing what he did that day. They'll

do more for him than his parents have probably done for him. That's what probation is and that's what it does for his life. But it does that for your life because you've got a nonproductive threat and that person is converted into a productive member of our society, at the very minimum, someone who at least is less likely to do what he has been convicted of. *And as far as the victims, they're protected because while he's on probation, he's going to learn what he did was wrong and he's going to improve and change his values and he's going to not do it again.*

(Emphasis added).

In the State's final argument at punishment, the State argued the following in response to appellant's trial counsel's statements:

> The State: Mr. Martinez would say to you, let's put this poor young man on probation so we can teach him some English, so we can teach him some job skills, so he can learn. Well, ladies and gentlemen, this man has already been learning and it's what's called on-the-job training. And what has he learned through all of this? Well, he's going to learn a lot about the trial process right now and he can learn more about what the jurors in Harris County, Texas will do when people go out and commit violent crimes. *But the scariest thing of all is you know what he's learned through all this, don't let the witnesses live because they'll come testify against you when you get convicted.*

(Emphasis added).

> Mr. Martinez: Objection, Your Honor. That's outside the record.

> The State: That's a reasonable inference from the evidence, Your Honor. It's argument.

> Mr. Martinez: Your Honor, I'm going to object that is a improper inference from the record. There is no evidence that— may I approach the bench, Your Honor. I don't want to say it out here.

> The Court: Yes.

(Bench discussion out of the hearing of the jury)

Mr. Martinez: The prosecutor seems to imply that these people were trying to kill the witnesses so that there would be no witness to live. I mean, there's no evidence to that.

The State: May I respond?

The Court: Yes.

The State: Your Honor, I'm making a plea for law's enforcement and the safety of the society. And I think making a statement that this defendant has been convicted because these witnesses are here to testify against him and that he now knows that has happened is completely proper. I don't see anything improper in that argument.

Mr. Martinez: He's not charged with shooting anyone or killing anyone. That's not what his charge is. It's like saying the same thing we objected to earlier, you know, about a capital murder in the making. This is the same argument here that we objected to.

(Proceedings before the jury)

The Court: Okay. Overruled. Go ahead.

The State: Thank you.

Mr. Martinez: Your Honor, just for the record, can I just move for an instructed verdict? I know you overruled me. Can I move for an instruction to the jury to disregard?

The Court: No, that's denied.

Mr. Martinez: Okay. Then I move for mistrial.

The Court: Denied.

The State: What do we know? We know that Daniel and Jesus were robbed that day and they came and they testified and they told you about it. And we know that because of that testimony, this man was convicted of aggra-

vated robbery. We know that he was pretty smart that night. He wore a black ski mask, took a loaded gun. But despite all of his precautions, despite all of his preparations, he still got caught and he still got convicted. You think about it. You think about what it's going to take next time, what he'll do next time. That's a scary thought. It's not a unfair thought. It's a thought that all of us ought to be thinking about. This is not personal. This is nothing between me and the defendant or you and the defendant. This is not about mercy and you feeling sorry for him and his mom back in Puerto Rico. This is punishment. This is an analysis of what should happen to this man based on what he did.

## Discussion

The law provides for, and presumes a fair trial, free from improper argument by the prosecuting attorney. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex.Crim.App.1990). Jury argument must be confined to four permissible areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App.1996); *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App.1980); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973).

Appellant argues that the State's comment that appellant has learned not to leave witnesses alive was clearly improper, and it cannot be demonstrated beyond a reasonable doubt this comment did not contribute to appellant's punishment. In support of his argument, appellant relies on our opinion in *Boulden v. State*, 787 S.W.2d 150 (Tex. App.—Houston [1st Dist.] 1990), *rev'd in part and aff'd. in part*, 810 S.W.2d 204 (Tex. Crim.App.1991).[2]

2. In *Boulden,* we sustained both points of error raised by the appellant and ordered an acquittal. The State only sought discretionary review to determine if we were correct in holding that the evidence was insufficient to support the verdict of guilt. The Court of Criminal Appeals conclud-

ed we erred in ordering an acquittal based on the sufficiency of the evidence but stated:

> The Court of Appeals also found reversible error on a point [improper jury argument] which the State did not seek review. Therefore, that part of the Court of Appeals' opin-

In *Boulden*, the defendant argued the trial court erred in overruling his objection to the State's argument at the punishment phase that the defendant might have been thinking he would not leave a victim alive to testify against him next time. *Id.* at 153. In reviewing the argument in light of the facts adduced at trial and in the context of the entire argument, we concluded in *Boulden* that the error was reversible. *Id.* at 154. At punishment, the State argued:

> And, you know, he wants a second chance. I tell you it concerns me about giving somebody like this a second chance because I don't particularly want to see any more victims. I tell you what: Based on this evidence and based on his conduct, I'm real concerned that there will be more victims. *What concerns me is that this process is educating him to the standpoint that maybe, you know, I made a mistake last couple of times. Next time, I won't leave a victim alive to testify.*

(Emphasis added).

The State relies on *Cain v. State*, 893 S.W.2d 681 (Tex.App.—Fort Worth 1995), *aff'd*, 947 S.W.2d 262 (Tex.Crim.App.1997) and similar cases for the proposition that if appellant committed an offense similar to the one committed in the instant case, he might use the weapon he brought with him in this case. *Id.* at 684. However, *Cain* and other cases cited by appellant are distinguishable from this case in that the prosecutor was speculating about what defendant could have done during the commission of the crime at issue, not what the defendant would or would not do during the commission of a future crime. Here, the prosecutor was speculating how appellant would react during the commission of a future crime, which was not a reasonable deduction from the evidence. Moreover, the prosecutor's speculation was not a reasonable inference from the evidence because appellant left (or tried to leave) the crime scene without attempting to kill witnesses and was caught by police in the act of leaving the scene; he was not apprehended because of his decision to leave the witnesses alive.

The State further contends it was permissible for the prosecutor to argue appellant might use probation as an opportunity to commit the charged offense again. However, the prosecutor did not simply state appellant may commit aggravated robbery again given probation, but went further alleging appellant would commit murder. We hold the comment was error because it did not fall within one of the four permissible categories of jury argument. *Zakkizadeh v. State*, 920 S.W.2d 337, 340 (Tex.App.—Houston [1 Dist.] 1995, no pet).

■ Having determined the comment was improper, we must determine if that error harmed appellant. TEX.R.APP. P. 44.2(b). Recently, the Court of Criminal Appeals looked to three factors in analyzing harm resulting from improper argument under rule 44.2(b): (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998).

The first factor does not weigh heavily in appellant's favor. In reviewing the record, it is apparent the State was not intentionally attempting to taint the trial process with improper argument. The prosecutor did not make any improper comments during the guilt-innocence phase, and the argument consisted of one sentence in an argument of 25 pages and was not repeated. In regard to the second factor, no curable action was taken. The third factor is not applicable here because appellant had already been convicted when the improper argument was made. Therefore, the prosecutor's improper argument should be analyzed only in regard to its impact on appellant's punishment.

After reviewing the maximum punishment allowed, the punishment the State argued

---

ion requiring the entry of an acquittal is reformed and the judgment of the Court of Appeals, as reformed, is affirmed.

*Boulden*, 810 S.W.2d at 207.

that he be given, and the punishment appellant received, we hold the improper argument did not harm appellant. The maximum punishment appellant could have received was 99 years or life with a possible fine up to $10,000. Although the State argued appellant be given no less that 40 years, the jury assessed punishment at 20 years, an amount far below what the State requested.

In light of the record as a whole, we conclude the jury was not influenced by the State's error and that the error was harmless.

We overrule issue one.

### Issue Two

In issue two, appellant argues the trial court committed reversible error in overruling appellant's request for a mistrial based on misconduct by the State's attorney during final argument when the State's attorney interjected the punishment expectations of a child and conversations with her four-year-old niece. Appellant additionally argues that the trial court erred in allowing the State's attorney's continued reference to her four-year-old niece over his objection.

During final argument at the punishment stage of trial, the following exchange occurred:

The State: Home invasions are really kind of scary. And the reason that they're scary is because they're so random. This is not a situation where one gang member shot another gang member so you can sit back comfortably in your living room and say, thank God I'm not in a gang because that's never going to happen to me. Or this is not a situation where somebody goes to the penitentiary for using cocaine and you go, thank God I don't use drugs because that will never happen to me. This is the kind of thing that can happen to anybody any night anywhere in Harris County. This time it happened to Daniel and Jesus. It could be anybody. It's random and that's what's frightening. I was at home the other night working in this trial case and my four-year-old niece called me. She said, come over, Lin-

da, I want you to come over for a while. I said, I can't, Sweetie, I'm working on my trial. She said, what's it about? She's bright, of course. She said, what's it about? And I started to tell her and I stopped and I——

Mr. Martinez: Objection, Your Honor.

The Court: Sustained.

Mr. Martinez: And ask the Court to instruct the jury.

The Court: Sustained. Members of the jury, don't consider those remarks for any purpose whatsoever.

Mr. Martinez: Move for a mistrial, Your Honor.

The State: May we approach?

The Court: No, you may not approach. Let's just go on.

Mr. Martinez: I move for mistrial. I need a ruling, Your Honor.

The Court: Denied.

Mr. Martinez: Thank you, Your Honor.

The State: Telling the facts of this case to a four-year-old little girl would frighten her. Telling the facts of this case to a four——

Mr. Martinez: Same objection, Your Honor.

The Court: Overruled. Go ahead.

The State: Telling the facts of this case to a four-year-old little girl would make her not able to sleep at night for fear that a man with a gun would break down her door and put a gun to her head and shoot her. But we're all adults here and we don't get to be spared that. We know what happened now and we know the possibilities about what could happen. We have the obligation and the duty to punish this man, not just because he deserves it and not just because he did a bad thing and not just for Daniel and Jesus and Officer Eckert and Officer Cole, although God knows that would be more than enough, but more importantly, for every four-year-old in this country and every person of every age so they can sit in their living

rooms and watch TV and take a bath and cook eggs and not be afraid that some greedy man is going to break down their door and try to kill them or rob them.

## Discussion

In reviewing issue two, we apply the same standards as set out in issue one. After appellant objected the first time regarding the State's attorney's comments about her discussion with her four-year-old daughter, the trial court sustained the objection and instructed the jury not to consider the remarks "for any purpose whatsoever." There is an appellate presumption that an instruction to disregard will be obeyed by the jury, curing any possible error. *Corwin v. State*, 870 S.W.2d 23, 37 (Tex.Crim.App. 1993). Regarding only the State's comments before the first objection, appellant gives no reason why we should not follow the appellate presumption, except that the comments were outside the record. In reviewing the record in its entirety, we conclude the comments were outside the record; however, the instruction was adequate to cure any error.

After the objection was sustained, the State continued to make reference to the four-year-old girl. Again, appellant objected, but the trial court overruled the objection, and the State proceeded without further objection. Appellant now argues the trial court erred in allowing the State's attorney to inject the feelings of her four-year-old niece into the case when the victims in the case were not children. In addition, appellant argues the State cannot make references to the expectations or demands of the community for a particular result, and the State's attorney's use of her four-year-old niece effectively represented a reference to the demands of the community. In support of this proposition, appellant relies on *Wilson v. State*, 581 S.W.2d 661 (Tex.Crim.App.1979). In *Wilson*, the court stated: "A jury argument that refers to the expectations or demands of the community for a particular result is error." *Id.* at 666. The State, however, is permitted to argue the impact of the jury's verdict on narrower groups making up "the community." *Borjan v. State*, 787 S.W.2d at 56. Included in these narrow groups are children. *Id.*

We do not believe the argument constituted error. In her argument, the State's attorney pointed out to the jury the impact such crimes can have on children. The State was not urging the jurors to punish appellant because of how the charged offense might have affected her four-year-old niece. Considering the record as a whole, we cannot say the argument was extreme or manifestly improper, nor did it inject new and harmful facts into the case.

We overrule issue two.

## Conclusion

We affirm the judgment.