Opinion issued May 8, 2003.


 










In The

Court of Appeals

For The

First District of Texas






NO. 01-01-01022-CR






EDGAR REED, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 848384






MEMORANDUM OPINION


 Appellant, Edgar Reed, was indicted on one count of felony murder for the
murder of Henry Mack Bailey. The indictment charged appellant with the felony
offense of deadly conduct by recklessly shooting a firearm into a home without regard
as to whether the home was occupied, thereby killing Bailey. A jury convicted
appellant and assessed his punishment at 10 years' confinement and a fine of $10,000. 
Upon the jury's recommendation, the judge ordered appellant placed on community
supervision. Among the conditions of appellant's community supervision was a
requirement that appellant pay $5,601.12 in restitution to Bailey's mother. 

 In five points of error, appellant contends (1) the evidence presented was
factually insufficient to sustain his conviction, (2) the trial court erred by denying
appellant's motion for a mistrial on grounds of prosecutorial misconduct, (3) the trial
court erred by overruling appellant's objections to improper jury arguments made by
the prosecutor, and (4) the trial court erred by requiring appellant pay restitution to
Bailey's mother. We affirm the judgment of the trial court. 

Background

 On the evening of June 23, 2000, several friends and neighbors gathered at the
home shared by Helen Ruth Walker Wright and her brother, Jessie Walker. Wright
testified that the guests had been there for most of the day, and that she and others had
used cocaine earlier that day. By evening, the guests were playing dominoes, smoking
marijuana, and drinking alcohol in the various rooms of the house. A fistfight began
between one of Wright's guests, Travis Thompson, and another man from the
neighborhood, Robert Knighten. Wright saw Knighten stab Thompson with a kitchen
knife and run out of the house. After Knighten fled, Thompson called appellant. 
Approximately 20 minutes after Thompson called, a black luxury car pulled up in
front of Wright's home. Wright saw Thompson walk over to the car and take a
shotgun that was handed to him by someone in the car. Wright did not see who
handed Thompson the gun, nor was she able to determine how many people were in
the car. While standing next to the car, still parked in front of Wright's house,
Thompson fired the shotgun twice into the air before the gun jammed. After the
shotgun jammed, Thompson got into the backseat of the car behind the driver's seat. 
Wright next saw appellant, whom she called "Eddie," get out of the car using the
backseat passenger's side door. Wright screamed to appellant that Knighten had
already fled the neighborhood. Appellant, however, ran a short distance in the
opposite direction from the direction in which Wright stated that Knighten had run. 
Wright saw appellant standing a short distance from the house of her neighbor, Mack
Bailey, a few houses from her own. Appellant was repeatedly firing into Bailey's
house with a long gun. After he finished shooting, appellant got back into the black
car, which then drove away. Wright and other neighbors went to Bailey's house,
where they found he had been fatally shot.

 Sergeant Larry Foltz, a police officer for the Houston Police Department
Homicide Division, testified that he and his partner arrived at the Bailey home at
approximately 2:00 a.m. The officers conducted witness interviews and a crime scene
investigation. 

 At the police station, Sergeant Foltz interviewed an eyewitness, Cynthia Simon. 
Sergeant Foltz testified that Simon identified appellant as the shooter and informed
police of appellant's home address. When the police conducted a records search, they
discovered that appellant had previously claimed ownership of a black Cadillac
Seville, and that appellant had made a police report regarding items stolen from the
Cadillac three months before the shooting. The next day, police obtained a
photograph of appellant and showed both Simon and Wright a photo array containing
appellant's photograph. Both Simon and Wright identified appellant as the person
who had shot into Bailey's home. 

 The police obtained a warrant for appellant's arrest and attempted to execute
that warrant the next day, Monday, June 25. Appellant was not at his home or at his
mother's home. After obtaining a search warrant that same day, police searched
appellant's mother's home and found a black Cadillac in the garage. Later that
afternoon, appellant's attorney contacted police and informed them that appellant
intended to surrender himself into custody. Appellant surrendered the next day.

 In addition to Wright's testimony, the State presented testimony from Simon
and another neighbor, Bobbie Ann Tillman. Simon testified that she lived in the same
neighborhood as Bailey and Wright, and that she was a guest at Wright's house
during the party. Simon's eyewitness testimony was very similar to that of
Wright's--she stated that she overheard Thompson make a telephone call and that
appellant arrived in a black luxury vehicle shortly afterwards. Simon saw appellant
run down the street towards Bailey's house, and she saw appellant firing a gun into
Bailey's house. Simon also admitted using cocaine and alcohol on the day of the
shooting. 

 Wright's and Simon's statements differed regarding the exact details of
appellant's clothing, the exact timing of events, and the type of car they saw pull up
to Wright's house. The statement that Wright gave police on the night of the shooting
was that the black car appellant drove was a Lexus, although Wright stated at trial
that she had told the officers the car was a Cadillac. In her testimony, Simon stated
that the black luxury car was a Lexus. Both Wright and Simon agreed, however, that
appellant was in a black luxury car, that he was wearing dark clothing at the time of
the shooting, and that the events in question took place sometime between 9:00 p.m.
and midnight on the night of June 23, 2000. Both Simon and Wright also
unequivocally stated that appellant was the person who fired the gun into Bailey's
house. Simon testified that she had known appellant for approximately 15 years and
that she had once had sexual relations with him. Simon stated that, although she only
saw appellant's profile as he got out of the car, she maintained a clear view of his
profile for several minutes and that she was certain it was appellant. Wright stated
that she knew appellant as a friend of Thompson's, that she had known appellant for
approximately nine years, and that she was completely certain that appellant had been
the person who fired into Bailey's home. 

 The State's third eyewitness, Tillman, was not at the Wright home the evening
of the shooting, but was instead at her home down the street from Bailey's and
Wright's homes. Tillman did not see who shot into Bailey's home, although she
testified that she heard two gunshots, and when she looked out the window, she saw
Thompson standing in front of the Wright home with a long-barreled gun. Tillman
immediately told her children to get down on the floor, and she also dropped to the
bathroom floor away from the window. She next heard several shots that she
described as "random." Tillman did not hear anything for approximately 15 minutes,
until she received a telephone call from Wright's mother, who wanted to know if
Wright or Walker had been shot. Tillman stepped out of her house and saw several
people in Wright's yard. Tillman then ran to Bailey's house, accompanied by several
neighbors, and determined that Bailey was dead. At trial, Tillman testified that she
knew appellant "from a drug transaction." Appellant's counsel objected to the
intriduction of the extraneous offense. In a hearing outside the presence of the jury,
both appellant's counsel and the prosecutor questioned Tillman about the
circumstances surrounding her preparation for trial by the prosecutors. Appellant's
attorney asked for an instruction to the jury to disregard Tillman's statement and for
a mistrial. The trial court found that Tillman's statement had not been intentionally
solicited by the prosecutor and that the prosecutor had been surprised by Tillman's
answer. The trial court accordingly instructed the jury to disregard Tillman's
statement regarding the drug transaction with appellant and the trial court denied
appellant's motion for a mistrial. Tillman later testified that she knew appellant
"from the neighborhood." Tillman also testified that she believed appellant drove a
black Maxima. 

 Appellant's girlfriend, Bianca Chatman, testified as appellant's alibi witness. 
Chatman stated that she spent the evening of the shooting, from 5:00 p.m. until 2:00
am, with appellant and his roommate at appellant's apartment. Chatman also
contended that, although appellant received a phone call from Thompson that
evening, appellant never left the apartment. On the night of the shooting, Chatman
testified, appellant's primary vehicle, a yellow Suburban, was being repaired so she
and appellant were without transportation. Chatman stated that, although appellant
had occasionally driven a black Cadillac, the car belonged to his cousin and was kept
at appellant's mother's house. Finally, Chatman acknowledged that it would be
difficult to mistake appellant for Thompson because Thompson weighed
approximately 270 pounds, while appellant weighed approximately 160. 

 Appellant testified in his own defense. He denied that he had taken part in the
shooting that evening and corroborated Chatman's testimony that he had spent the
evening in his apartment with Chatman and his roommate. Appellant admitted that
he had received a telephone call from Thompson, but denied that he had left the house
after receiving the call. Appellant denied knowing anything about the events of the
evening until he received a second telephone call from someone in Wright's and
Bailey's neighborhood, asking him why he had killed Bailey. 

 Appellant stated that he knew Simon, Wright, and Tillman casually. Appellant
admitted that he had hired Simon to clean his house occasionally, but he denied that
he ever had sexual intercourse with her. Appellant stated that he stopped hiring
Simon to clean his house because he believed that Simon had stolen money from him.

 During closing argument, the prosecutor for the State asked the jury to find
appellant guilty of murder. During her closing argument, the prosecutor attacked the
credibility of appellant's alibi that he never left his apartment on the evening Bailey
was killed:

 [Appellant's] own testimony corroborates what [the State's witnesses]
got up and told you. He did receive a phone call from his boy, from his
best friend, from some - as some would describe his cousin,
[Thompson] . . . . He got a call from him. And he admitted he got a call
from him. 

 

 And this little smirk that we see, that's what they want you to believe. 
That's what they want you to believe. This is not funny. His friend calls
him and says, "Man, I just got stabbed," and he wants you to believe all
he said was, "I can't come pick you up." 

 

 Does that make sense? His best friend, a guy he hangs out with. I'll tell
you how you know that they're best friends. Why would [Thompson]
call [appellant] after just being stabbed in the chest if they weren't so
close? He was upset and he called [Appellant] to bring the heat. And
that's exactly what he did. He got in his car--

At that point, appellant's counsel objected, claiming that the prosecutor's argument
contained facts outside of the evidence presented. The objection was overruled. The
prosecutor continued her argument, and later stated:

 Do you think if you're charged with a first degree murder and you get
a call at your residence saying, "We know you shot Bailey," do you
think you're going to try to figure out, call the police, let them know,
"Hey, something is going on. I've been accused. I don't know what's
going on." 


 But murder is pretty heavy stuff. And then if you're not that bright to
do that yourself, do you think after you've hid out for three days --


 Appellant's counsel objected to the prosecutor's implication that appellant was
hiding from the police. This objection was also overruled. 

 The jury found appellant guilty of felony murder. During the punishment
phase, Bailey's mother testified that Bailey was her middle child, and that, at the time
of trial, all three of her children were dead. Mrs. Bailey also testified that Bailey was
survived by his 10-year-old daughter. Mrs. Bailey stated that she had been
responsible for providing funeral arrangements for her son, although she had received
some assistance from Bailey's recently deceased sister, and from an insurance policy
that Bailey had. The jury assessed appellant's punishment at 10 years' incarceration
and a fine of $10,000. The jury recommended suspending appellant's sentence and
placing appellant on community supervision. The trial court accepted the jury's
recommendation and sentenced appellant to 10 years' community supervision. One
of the conditions of appellant's community supervision required appellant to pay
restitution in the amount of $5,601.12 to Mrs. Bailey. (1) 

 In his appeal, appellant raises four issues. He contends (1) the evidence
presented by the State was factually insufficient to sustain his conviction, (2) the trial
court erred when it denied his motion for a mistrial on grounds of prosecutorial
misconduct, (3) the trial court erred by overruling his objections to improper jury
arguments made by the prosecutor, and (4) the trial court erred by requiring him to
pay restitution to Bailey's mother. 

Factual Sufficiency

 In his first point of error, appellant argues that the evidence presented was
factually insufficient to support the jury's determination that appellant was the person
who shot into Bailey's house. 

 Appellant next contends the evidence was factually insufficient to support his
conviction. When reviewing the factual sufficiency of the evidence, we ask whether
a neutral review of all the evidence, both for and against the finding of guilt,
demonstrates that the proof is so obviously weak as to undermine confidence in the
jury's determination, or the proof, although adequate if taken alone, is greatly
outweighed by contrary proof. King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App.
2000). Accordingly, we will reverse the fact finder's determination only if a manifest
injustice has occurred. Id. 

 Appellant points to conflicting statements made by Wright, Simon, and Tillman
regarding the time of the shooting, the position of the shooter in relation to Bailey's
house, and the car driven by the shooter. Appellant also points out that Simon and
Wright gave different descriptions of the clothing the shooter was wearing that
evening, and that both Simon and Wright admitted that they had used narcotics earlier
in the day. Additionally, appellant argues that, because of the time of night and the
poor lighting on the street, and because of their distance from the shooter, Simon's
and Wright's testimony that they both recognized appellant as the shooter cannot
support his conviction. Finally, appellant contends that, in light of the alibi
corroborated by his girlfriend at his trial, the contradictory evidence presented by the
State was greatly outweighed by his own contrary proof. 

 The jury is the sole trier of fact and may judge the credibility of witnesses,
reconcile conflicts in testimony, and accept or reject the evidence presented. 
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Accordingly, the
jury was free to disbelieve the version of events provided by appellant and his
girlfriend. Likewise, the jury was instead free to believe the testimony of Simon and
Walker that appellant was the person who shot into Bailey's home. The jury heard
the testimony of Simon and Walker that they both knew appellant and that they were
certain of their identification of him as the shooter. "What weight to give
contradictory testimonial evidence is within the sole province of the jury because it
turns on an evaluation of credibility and demeanor." Cain v. State, 958 S.W.2d 404,
408-09 (Tex. Crim. App. 1997). A jury's decision is not manifestly unjust as to the
accused merely because the jury resolved conflicting views of the evidence in favor
of the State. Id. at 410. We cannot conclude, after examining all the evidence, that
proof of appellant's guilt is so obviously weak that it undermines our confidence in
the jury's findings of guilt, or that it is greatly outweighed by contrary proof. See
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We overrule appellant's
first point of error. 

Prosecutorial Misconduct

 In his second point of error, appellant contends that the trial court erred when
it denied his motion for a mistrial on grounds of prosecutorial misconduct. We
review a trial court's denial of a motion for mistrial under an abuse-of-discretion
standard. See Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Mistrial is
a device used to halt trial proceedings when the error is so prejudicial that
expenditure of further time and expense would be wasteful and futile. Id. To
determine whether a given error necessitates a mistrial, we must examine the
particular facts of the case. Id. A mistrial is required only when the impropriety is
clearly calculated to inflame the minds of the jury and is of such a character as to
suggest the impossibility of withdrawing the impression produced on the minds of the
jury. Hinojosa v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). 

 Appellant contends that the prosecutor intentionally solicited prejudicial
testimony regarding appellant's extraneous offenses from Bobbie Ann Tillman. 
When the prosecutor asked Tillman how she knew appellant, Tillman replied that she
knew appellant "from a drug deal." Appellant's objection to this testimony was
sustained, and the trial court instructed the jury to disregard Tillman's statement. 
However, the trial court denied appellant's motion for a mistrial. Tillman's statement
was a single passing reference, in the middle of her testimony, to a drug transaction
in which appellant's role was never fully described. The trial court immediately
sustained appellant's objection, and after finding that the prosecution did not
intentionally solicit the testimony, the trial court issued an instruction to the jury to
disregard Tillman's statement. Tillman amended her answer to a more innocuous
explanation of how she had met appellant. 

 Generally, testimony referring to or implying extraneous offenses allegedly
committed by the defendant may be rendered harmless by the trial court's instruction
to disregard. See Coe v. State, 683 S.W.2d 431, 436 (Tex. Crim. App. 1984). We
presume the jury followed the trial court's instruction. See Gardner v. State, 730
S.W.2d 675, 696 (Tex. Crim. App. 1987). It does not appear from the record that
Tillman's statement was calculated to inflame the minds of the jury, nor was it of
such damning nature that the impression was impossible to remove from the minds
of the jury. Accordingly, the trial court did not abuse its discretion by denying
appellant's motion for a mistrial. We overrule appellant's second point of error. 

Improper Closing Arguments

 In his third and fourth points of error, appellant argues that the trial court erred
when it overruled appellant's objections to improper jury arguments made by the
prosecutor. Appellant points to three comments made by the prosecutor during her
closing argument.

 The law provides for, and presumes, a fair trial free from improper argument
by the State. Long v. State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). There are
four permissible areas of jury argument: (1) summation of the evidence, (2)
reasonable deduction from the evidence, (3) answers to the argument of opposing
counsel, and (4) pleas for law enforcement. Borjan v. State, 787 S.W.2d 53, 55 (Tex.
Crim. App. 1990); Cifuentes v. State, 983 S.W.2d 891, 895 (Tex. App.--Houston [1st
Dist.] 1999, pet. ref'd). Arguments referencing matters that are not in evidence and
that may not be inferred from the evidence are usually "designed to arouse the passion
and prejudices of the jury and as such are highly inappropriate." Borjan, 787 S.W.2d
at 57. However, a party is permitted to draw reasonable inferences from the evidence
and is to be afforded wide latitude in its jury arguments, as long as counsel's
argument is supported by the evidence and in good faith. See Coble v. State, 871
S.W.2d 192, 205 (Tex. Crim. App. 1993); Griffin v. State, 554 S.W.2d 688, 690 (Tex.
Crim. App. 1977). 

 First, appellant contends the trial court erred when it overruled appellant's
objection to the prosecutor's implication that appellant was hiding from the police
when she said, "And then, if you're not that bright [to turn himself in], do you think
after you've hid out for three days." Second, appellant contends the trial court erred
when it overruled appellant's objection to the prosecutor referring to appellant's
demeanor when she stated that "the cloud of innocence as he sits here and smirks has
been removed by the physical evidence." Lastly, appellant contends the court erred
when it overruled appellant's objection when the prosecutor, referring to Thompson,
stated that "[h]e was upset and he called [appellant] to bring the heat." 

 On appeal, appellant argues that the first two comments, in which the
prosecutor implied that appellant wasn't "that bright," that appellant attempted to
evade arrest, and that appellant was "sitt[ing] here and smirk[ing]" were statements
referring to evidence outside of the record and statements made to inflame or
prejudice the minds of the jury. Appellant contends that the third statement, that
Thompson "was upset and called [appellant] to bring the heat," was also outside of
the record, unsupported by evidence, and highly prejudicial. 

 Appellant has not preserved for appeal his first contention that the prosecutor's
closing argument impugned his intelligence. Appellant's trial objection to the
prosecutor's statement, "And then if you're not that bright to [turn yourself in to the
police], do you think after you've hid out for three days," was that there was no
evidence of appellant hiding from the police. Accordingly, any error in the
prosecutor's implication that appellant was not bright enough to contact the police
after he was told he was a murder suspect has been waived. See Cockrell v. State, 933
S.W.2d 73, 89 (Tex. Crim. App. 1996).

 Next, we examine the prosecutor's implication that appellant "hid out" for
three days after being informed he was a suspect in Bailey's murder. Testimony at
trial established that the police notified appellant's mother that a warrant existed for
appellant's arrest two days after the shooting, and that appellant's attorney contacted
the police to make arrangements for appellant to turn himself in. Appellant did not,
however, surrender to Appellant contends he did not turn himself into the police until
three days after the murder because he did not know that he was a suspect in the
crime. However, appellant's own testimony established that he had been notified on
the night Bailey was shot that witnesses believed appellant had been the shooter. In
light of appellant's own testimony, we find that the prosecutor's reference to
appellant "hid[ing] out" was a reasonable deduction from the evidence and was not
an improper jury argument. 

 Likewise, the prosecutor's statement that brought the jury's attention to
appellant's courtroom demeanor, "as he sits here and smirks," was also not an
improper jury argument. Although a prosecutor may not comment upon a defendant's
non-testimonial courtroom demeanor in order to request that the jury draw an
inference of guilt from it, Good v. State, 723 S.W.2d 734, 735 (Tex. Crim. App.
1986), the argument in this case did not refer to appellant's demeanor as evidence of
his guilt. Instead, the prosecutor's comment that appellant's guilt had been
established by the physical evidence "as he sits here and smirks" simply reflected the
power of the jury to observe appellant's "general courtroom behavior and drawn some
conclusions from that behavior." Id. at 736, n.3. 

 Finally, the prosecutor's reference to Thompson's phone call to appellant in
which Thompson supposedly "called [appellant] to bring the heat" was not an
improper jury argument because it was a reasonable deduction from evidence
presented during the trial. On appeal, appellant asserts that this statement was both
outside the record and prejudicial because it injected facts not in evidence before the
jury. Appellant's contention is without merit because, in appellant's own testimony, 
he admitted receiving a call from Thompson after he had been stabbed. In light of the
eyewitness testimony identifying appellant as the person who fired into Bailey's
house and the testimony from witnesses who stated that appellant and Thompson
were friends and that appellant drove a car similar to the one witnesses saw during
the shooting, the prosecutor's statement was a reasonable inference drawn from the
evidence. Accordingly, the prosecutor's statement that appellant was called by
Thompson and asked "to bring the heat" was not an improper jury argument. We
overrule appellant's third and fourth points of error.

Restitution

 In his fifth and final point of error, appellant contends that the trial court erred
when it required him to pay restitution to Bailey's mother as a condition of his
community supervision. 

 A trial court judge has broad discretion in imposing conditions of community
supervision, including restitution where there is a factual basis in the record to
conclude that a defendant is liable for the criminal conduct and where a factual basis
exists to determine the amount of restitution. See Tex. Crim. Proc. Ann. art 42.12
§§ 11(a)(20), (b) (Vernon 1979 & Supp. 2003). 

 Appellant argues that the trial court erred when it imposed restitution where the
record contains no evidence regarding expenses or damages incurred by Bailey's
family. Because appellant argues that the trial court erred by imposing restitution in
any amount, we construe appellant's argument as a challenge to the appropriateness
of the trial court's order that appellant pay restitution instead of a factual sufficiency
challenge to the amount of restitution imposed. 

 The trial court's docket sheet reflects that appellant waived a court reporter for
the sentencing phase of his trial. Accordingly, we are unable to determine whether
appellant objected to the conditions imposed during the sentencing hearing. An
explicit objection in the trial court is required before an appellant may complain of
the appropriateness of conditions of probation on appeal. See Idowu v. State, 73
S.W.3d 918, 921 (Tex. Crim. App. 2002). Accordingly, we overrule appellant's fifth
point of error. 

Conclusion

 We affirm the judgment of the trial court.

 

 George C. Hanks, Jr. Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).
1. Although a reporter's record exists for the punishment phase and for the return
of the jury's punishment verdict, appellant waived a court reporter for the trial
court's sentencing hearing.